In re Elaine J. MYERS, Debtor.

Elaine J. MYERS, Plaintiff,

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, Defendant.

Bankruptcy No. 92–1454–BM.
Adv. No. 92–0318–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 4, 1993.

Gary H. Simone, Rishor Simone, Butler, PA, for plaintiff/debtor.

K. Kevin Murphy, PHEAA, Harrisburg, PA, defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor Elaine J. Myers ("debtor") seeks a determination pursuant to 11 U.S.C. section 523(a)(8)(B) that a debt she owes to Pennsylvania Higher Education Assistance Agency ("PHEAA") is dischargeable.

Debtor claims that excepting the debt from discharge will impose an undue hardship upon her and her adult daughter. PHEAA denies that repayment of debtor's educational loan will result in undue hardship.

The debt in question is not dischargeable for reasons set forth below.

## I

### FACTUAL BACKGROUND

Debtor attended Slippery Rock University starting in 1984 and successfully completed her studies so as to graduate with a Bachelor of Science degree in Public Administration *magna cum laude* in 1988. Her education was financed through a student loan guaranteed by PHEAA.

Thereafter, she utilized a period of time in a failed effort to find a job relating to public administration. As a result, debtor, who had been certified as a nurse since 1963, resumed her nursing career. Debtor has continued since then to work as a nurse, except for a six-month period between jobs when she was unemployed. She currently nets $1500.00 per month as a supervisor of nurses and aides at Sunny View Nursing Home.[1] She has no other source of income.

Debtor is fifty years old. Although she has no dependents, she spends $80.00 per month on counseling for her 27 year old daughter who allegedly suffers from an eating disorder and $200.00 per month for the five months in each year when her daughter chooses to live with her. Debtor spends in excess of $100.00 per month on telephone expenses in order to communicate with her daughter during the seven-month period when her daughter lives in Florida.

Debtor spends $388.00 monthly on therapists, psychiatrists, and medication for treatment of a self-diagnosed mood disorder which purportedly causes her depression and panic attacks. Debtor maintains, without expert medical substantiation, that she will never be cured of this illness and can be expected to incur such expenses for the rest of her life.

Debtor spends $580.00 per month on rent, utilities, and maintenance of her apartment, $50.00 for recreation, $20.00 for cable television, and $10.00 per month on charitable contributions. These figures are included in a statement of debtor's expenditures, Schedule J, which is attached to debtor's bankruptcy petition. She is well dressed and coifed and appears to enjoy the amenities available to a middle class professional.

Debtor filed a voluntary chapter 7 petition on April 1, 1992, seeking a discharge of debts approximating $17,000.00. A substantial portion of these debts relate to PHEAA, leading the court to conclude that the purpose of this filing was to seek a discharge of these generally nondischargeable debts.

## II

### ANALYSIS

Debtor seeks to have her student loan debt discharged under the exception set

---

**1.** No detailed information was submitted at trial providing clarity to the deductions from debtor's gross income. It is known from her 1991 tax return that in 1991 her gross compensation was $25,970.00.

forth at 11 U.S.C. section 523(a)(8)(B), which states in pertinent part that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

When it is the debtor bringing a complaint to determine dischargeability under the "undue hardship" exception, the burden of proof is split between the parties as to issues. *Matter of Coleman,* 98 B.R. 443, 446 (Bankr.S.D.Ind.1989).

■ The creditor has the initial burden of proving the existence of the debt and that it is owed to or insured or guaranteed by a governmental agency or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or the existence of an obligation to repay funds received as an educational benefit, scholarship or stipend. In addition, the creditor must prove that such loan, benefit, scholarship, or stipend overpayment first became due less than seven (7) years before the date on which the bankruptcy petition was filed. *See Matter of Coleman,* 98 B.R. at 447 (*citing In re Norman,* 25 B.R. 545, 548 (Bankr.S.D.Cal. 1982)).

■ The burden of proof as to "undue hardship" is on the debtor. *Binder v. U.S. Dept. of Education,* 54 B.R. 736, 739 (Bankr.D.N.D.1985). This is so because a claim of undue hardship is in the nature of an affirmative defense or an exception to the exception of such a debt from discharge. *Matter of Coleman,* 98 B.R. at 447.

Debtor does not dispute that she owes a debt which was guaranteed by a governmental agency and which became due less than seven (7) years prior to the date on which she filed her chapter 7 petition. Consequently, the burden is upon her to prove "undue hardship" if she is to prevail in this action.

■ "Undue hardship" is not defined in the Bankruptcy Code. It is a term of art to be interpreted in the discretion and judgment of the court. Whether undue hardship would occur is a question of fact which is to be determined on the basis of the particular circumstances of each case. *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews),* 661 F.2d 702, 704 (8th Cir.1981).

■ The fact that a debtor's budget may be tight for the foreseeable future is the norm rather than the exception when one files for bankruptcy. *U.S. v. Collier (In re Collier),* 8 B.R. 909, 911 (Bankr.S.D.Ohio 1981). Undue hardship is not established by proof that repayment of a student loan would bring about mere "unpleasantness" or "garden variety hardship". *Lezer v. New York State Higher Education Services Corp. (In re Lezer),* 21 B.R. 783, 787 (Bankr.N.D.N.Y.1982). More than present inability to repay is required to establish undue hardship. *Abrams v. Univ. of Nebraska at Lincoln (In re Abrams),* 19 B.R. 64, 66 (Bankr.D.Neb.1982).

Several courts have adopted a tripartite test for determining whether a debt is dischargeable due to undue hardship. The test, first set forth in *In re Johnson,* 5 BCD 532 (Bankr.E.D.Pa.1979), sets forth a sequential procedure for analyzing the facts of a given case. *In re Erickson,* 52 B.R. 154, 157 (Bankr.D.N.D.1985) (citations omitted).

The tests may be termed, in order, the "mechanical" test, the "good faith" test, and the "policy" test.

■ The "mechanical" test requires a debtor to show that his or her financial resources in the foreseeable future will not be sufficient to enable the debtor to support himself and his dependents (if any) at

a subsistence level while the debtor repays the debt obligation. *In re Erickson*, 52 B.R. at 157. The court is required, at this stage of analysis, to consider such factors as debtors present employment and income, future employment and income potential, educational level and skills, the marketability of those skills, debtor's health, and debtor's family support responsibilities. *In re Johnson*, 5 BCD at 537–540.

Educational loans usually are repaid over a relatively long period of time, typically (10) years. Consequently, a debtor generally must show that his or her financial situation will not foreseeably improve over the next ten (10) years or so. *In re Bey*, 95 B.R. 376, 378 (Bankr.W.D.Pa.1989). Furthermore, PHEAA has a history of flexibility with regard to repayment and has accepted terms in which payments may be as low as $10.00 per month until the debtor's financial circumstances improve. *In re Kobulnicky*, 64 B.R. 315, 316 (Bankr.W.D.Pa. 1986).

■ If the debtor fails to make the showing required under the "mechanical" test, discharge of the debt in question must be denied. If, however, debtor does make such a showing, the court then must proceed to the second stage of analysis. *In re Johnson*, 5 BCD at 544.

■ The second stage of the analysis is reached if and only if the debtor has met his or her burden of proof with respect to the so-called "mechanical" test. Assuming that repayment of the loan would result in the requisite "undue hardship", discharge still must not be granted unless the debtor has made a "good faith attempt" to repay the loan. *In re Johnson*, 5 BCD at 540. A court must, when considering this matter, determine:

(1) whether the debtor has made a *bona fide* attempt to find a good-paying job;

(2) whether the debtor has made a true effort to maximize his financial resources; and

(3) whether the debtor has been careful to minimize expenses.

*In re Johnson*, 5 BCD at 541.

■ The third and final phrase of analysis is the so-called "policy" test, which requires the court to ascertain whether debtor's attempt to discharge the student loan obligation constitutes the sort of abuse which section 523(a)(8)(B) was enacted to prevent. *In re Johnson*, 5 BCD at 542. This analysis requires the court to infer debtor's motivation in filing the bankruptcy petition. Debtor's motivation may be ascertained by determining the benefit derived from the loans by gauging what percentage of the total indebtedness they represent. *In re Albert*, 25 B.R. 98, 101 (Bankr.N.D.Ohio 1982). This final phase need be considered by the court only if the debtor has met his or her burden of proof under the so-called "mechanical" test. *In re Erickson*, 52 B.R. at 157.

■ Debtor has failed to meet the "mechanical" test. She has not shown that her financial resources will be inadequate in the foreseeable future to enable her to support herself at a subsistence level while repaying her student loans.

Debtor can support herself at a subsistence level with the $1500.00 monthly income from her supervising job. Debtor claims that her mental disorder will somehow affect her ability to retain her job. This argument is not convincing. Debtor presented no medical evidence diagnosing her condition or how it affects her ability to work. Nor did she cite any examples of previous jobs lost due to her alleged illness. Therefore, there is no reason to suppose this condition will lead to her dismissal in the future.

Debtor testified that her present employers have indicated that she may be fired if she does not improve certain aspects of her performance. Debtor can correct these problems. Her employers objected to her tardiness and to her use of the resident podiatrist's services during working hours. Debtor presented no evidence to show how her self-diagnosed mental disorder has caused such problems as these. On the contrary, she appeared to be healthy, bright, and articulate at trial. Furthermore, the fact that she has held her supervising position for an extended period sug-

gests that she is capable of stopping these objectionable habits and retaining her job.

Moreover, debtor appears to be a capable nurse with marketable skills and promising future employment prospects. Except for a short period between jobs, debtor has had a steady record of employment during the time frame in which she chose to work. In addition, debtor's health-related skills are in great demand in the current economy.

Debtor's distinguished academic record also improves the outlook for her future employment prospects. Her placement in the top two percent (2%) on the nursing board's examination in 1963 and graduation in 1988 with honors from Slippery Rock University attest to debtor's intelligence and probably would impress prospective employers. While debtor claims that her four-year degree will not enable her to obtain a job in the public administration field, a college degree does, in fact, improve her income earning potential in general.

Finally, it is not obvious from Schedule J that debtor's expenses exceed her income. Even if they do, debtor could reduce her expenses by spending only what is necessary for her own subsistence. Debtor only needs to support herself on her $1500.00 monthly salary. She has no dependents. While debtor's desire to assist her 27 year old daughter is understandable, she has no legal responsibility to do so. Moreover, debtor's daughter has alternative means of income. She is an honors graduate of the University of Pittsburgh, having a Bachelor of Science degree in chemistry. For the majority of the year she lives in Florida with a friend who helps support her. Additionally, she is employed and/or employable. While we salute debtor's noble desire to help her daughter, the burden of this assistance may not be shifted to creditors or the American taxpayers.

Furthermore, the amount debtor spends on rent and maintenance for her apartment exceeds the amount reasonable for housing at subsistence level. Debtor also failed to introduce medical support to substantiate that an expense of $388.00 per month for medicine and counseling for a purported mental disorder is necessary for subsistence.

Because debtor must generally show that: (1) his or her financial situation will not permit a small payment; and (2) his or her financial situation is unlikely to improve over the next ten years or so, debtor fails to meet the burden of proof under the "mechanical" test. *In re Bey*, 95 B.R. at 378.

The education loan is nondischargeable because debtor fails to meet the "mechanical" test. *In re Johnson*, 5 BCD at 541. The court is not required to consider the "good faith" and "policy" tests if the debtor fails to meet the "mechanical" test. *Id.*

But even if debtor had passed the "mechanical" test, she would still be ineligible for a discharge on the basis of the "good faith" test because she failed to minimize her expenses. Her expenditures on medical care and food for her adult daughter might be reasonable for a non-bankrupt debtor, but, in debtor's case, such a gift can not be approved of at the expense of creditors. Likewise, debtor's $100.00 monthly phone bill and $70.00 per month on entertainment are excessive. Debtor could make fewer calls for shorter durations to her daughter in Florida without sacrificing contact or peace of mind altogether.

We are advised that the funds utilized by debtor to enhance her education are recycled. The taxpayers set up a *RES* which is to be used and repaid. A danger exists that if repayment does not occur another worthy candidate will be denied the opportunity that debtor enjoyed. As a result, these prayers for relief are court reviewed and granted only when the debtor has met the appropriate burden of proof. In this instance debtor has not carried her burden. Accordingly, the debt in question is determined to be nondischargeable.

An appropriate order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 4th day of February, 1993, in accordance with the foregoing Memorandum Opinion, it hereby is ORDERED, ADJUDGED and DE-

CREED that judgment is entered in favor of defendant Pennsylvania Higher Education Assistance Agency and against debtor/plaintiff Elaine J. Myers. The student loan obligations owed by plaintiff to defendant be and is NONDISCHARGEABLE.