**In re Kathleen Alexandra
O'BRIEN, Debtor.**

**Kathleen Alexandra O'BRIEN, Plaintiff,**

**v.**

**HOUSEHOLD BANK FSB, Defendant.**

**Bankruptcy No. 93–50314.
Adv. No. 93–5016.**

United States Bankruptcy Court,
W.D. Missouri.

Jan. 10, 1994.

Alicia Beeler Villines, Independence, MO, for debtor/plaintiff.

James Phelan, Kansas City, MO, for defendant.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This is a proceeding to determine if requiring debtor to repay her student loans would impose an undue hardship. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the involved debt is dischargeable pursuant to 11 U.S.C. § 523(a)(8)(B).

### FACTUAL BACKGROUND

This matter was tried on December 30, 1993. The only witness called was the debtor. She testified that prior to her honorable discharge in 1986, she was a meteorological

officer with the United States Air Force. While on duty in Korea she began having headaches, sore throats, and fever. Prior to and after her discharge, debtor has suffered from fatigue and lack of concentration. However, she left the Air Force with the intention of attending law school, and had been accepted at the UMKC School of Law in Kansas City, Missouri. Feeling that her health was improving, and not having been advised of any permanent condition, she enrolled at the law school in August 1987. In order to pay her expenses, she took out student loans, in the principal amount of $15,000.00. It is those loans which are the subject of this dischargeability proceeding.

Law school was a disaster for debtor. Her grades were poor, and she left school in the middle of her second year. According to her testimony, in the summer of 1988, she was diagnosed by doctors from the Veterans Administration with "Chronic Fatigue Syndrome" ("CFS"). She testified that, because of her condition, she was listless, tired, and unable to concentrate the entire time she attended law school.

After leaving law school, debtor worked for approximately eighteen months at Park College, in a clerical position, earning $5.25 per hour. Prior to joining the Air Force she had received an undergraduate degree from Park College, majoring in mathematics with a minor in chemistry. Because she was considered "underemployed," defendant granted debtor a deferment on her student loan obligation while she was employed at Park. Debtor stated she was eventually fired from her job at Park due to substandard performance. In particular, she missed an inordinate number of work days due to CFS, and her condition made it impossible for her to focus properly on days she did go to work.

Since being fired, debtor has sought new employment, but without much luck. She held one job for a day, another for one month. She has done a small amount of library research work for local writers. She has also done some volunteer work for a charitable organization. She testified that she can and has worked as much as five to ten hours per month for such organization, but only because the volunteer nature of the work puts no stress on her. She is at this time pursuing both veterans and social security disability claims. In the meantime, she receives unemployment compensation, as well as some assistance from her mother. Debtor lives alone and has no dependents.

According to debtor, she has been told by her doctors that there is no known cure for Chronic Fatigue Syndrome. She has been told that bed rest and antibiotics are the only ways to relieve her symptoms. Although she has looked into certain experimental treatments, she has neither money nor health insurance with which to pay for such treatments. And, she testified that her doctors have advised her that for the foreseeable future her condition will not change. In addition to Chronic Fatigue Syndrome, she testified that she periodically suffers from mononucleosis. And, she takes Prozac, which was prescribed by the mental health clinic at the Veteran's Administration Hospital. She has made no payments on the loan, which first came due on February 1, 1991. The creditor apparently offered to renew the loan and extend the due date in April 1993, but debtor testified she did not sign the renewal because she knew she would not be able to repay the loan.

### DISCUSSION

■ The Code provides that a student loan obligation may be discharged in a debtor's Chapter 7 bankruptcy case if "[e]xcepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8)(B). The debtor must prove by a preponderance of the evidence that failure to discharge a student loan would impose an undue hardship on the debtor. *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993). *Alliger v. Pennsylvania Higher Education Assistance Agency (In re Alliger)*, 78 B.R. 96, 99 (E.D.Pa.1987). There is no definition of undue hardship in the Code, therefore, it is in the discretion of the bankruptcy court to determine if the facts of a particular case warrant a finding of dischargeability of the debt. *Myers v. Pennsylvania Higher Educations Assistance Agency (In re Myers)*, 150 B.R. 139, 142 (Bankr.W.D.Pa.1993); *In*

*re Ipsen,* 149 B.R. 583, 585 (Bankr.W.D.Mo. 1992); *In re Johnson,* 121 B.R. 91, 93 (Bankr.N.D.Okla.1990). This Court has adopted the standard for determining undue hardship set out in *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395 (2nd Cir.1987), which requires the following three-part showing:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* at 396. In order for me to make a finding of undue hardship, debtor must prove that all three prongs of the *Brunner* test apply. *Id.*

■ Once the debtor makes a credible showing that undue hardship exists, the burden of production shifts to the creditor to present some evidence to rebut the debtor's case. *Id.;* II John W. Strong, *McCormick on Evidence* § 336 at 425–27 (4th ed. 1992). If the trier of fact remains in doubt as to a fact after the burden of production shifts to the creditor, then the creditor has failed to satisfy its burden, and the trier of fact must find that undue hardship exists. *McCormick on Evidence* at 426.

■ In this case, debtor has carried her initial burden. She testified that she has been diagnosed with CFS, that this condition prevents her from working, that she is currently unemployed, and that there is no expectation that she will recover for the foreseeable future. In response, the defendant not only presented no evidence, but failed to object to any of debtor's testimony. My own research shows there is a great deal of controversy surrounding what causes CFS, whether the disease is physiological or psychological, and how long it takes for recovery. *See, e.g.,* Cheryl Cornacchia, *Chronic Fatigue: Mind or Matter?, The Montreal Gazette,* Dec. 13, 1993, at F1; Leslie Berkman, *Sufferers of Chronic Fatigue Syndrome Face Learning to Relearn, L.A. Times,* Janu-

ary 31, 1993, at B3; Sandra Blakeslee, *Three Centers Pressing for Causes of Chronic Fatigue Syndrome, N.Y. Times,* January 13, 1993, at C12. Nonetheless, debtor testified that she has suffered from the disease since 1986. She stated she was employed for eighteen months at one stretch, but was eventually asked to leave because her performance was substandard. Debtor also stated she acquired another job recently, but was forced to quit after one day because she became so fatigued. Debtor is currently unemployed, and her only source of income is unemployment benefits. None of this testimony was controverted by defendant. Further, defendant offered no evidence that debtor's condition will improve. Therefore, I have only debtor's testimony that the condition exists and that her prognosis for recovery in the foreseeable future is poor. I must now determine if those facts would make repayment of the student loans an undue hardship using the three factor test set forth in *Brunner.*

Debtor is currently unemployed and her only source of income is unemployment benefits. She is unable to actively seek employment at this time. Debtor's mother provides debtor with a car and subsidizes a portion of her expenses. For these reasons, I find that based on current income and expenses, debtor cannot maintain a minimal standard of living for herself if forced to repay the student loans.

Debtor testified without objection that she has suffered from CFS since 1986. She gave intelligent, precise, detailed testimony about treatment for CFS. She also stated her prognosis is bleak, and her doctors feel she will be permanently disabled by this condition. While I found debtor to be an extremely intelligent, alert, and focused woman, who was able to concentrate fully during the course of the hearing, I have no evidence to contradict her testimony. Therefore, because of debtor's uncontested claim that she is permanently disabled, I find that her condition will persist for a significant portion of the repayment period.

■ Finally, debtor must convince the Court that she has made a good faith effort to repay the loans. A good faith effort is measured by debtor's efforts to obtain a good paying job, maximize income, and minimize expenses. *In re Roberson,* 999 F.2d 1132,

1136 (7th Cir.1993); *Myers,* 150 B.R. at 143. Debtor has been able to obtain some employment since she left law school, but she has been unable to hold down a steady job. The issue is whether the circumstances which led to her unemployment were beyond her control or whether debtor willfully or negligently caused unemployment which resulted in her inability to repay her student loans. *Roberson* at 1136. No questions were raised about debtor's lifestyle nor were any of her expenses questioned. No evidence was offered which would allow me to find that debtor in any way caused her medical condition. Therefore, having found that debtor's health does not allow her to repay her student loans and maintain a minimal standard of living, and having found that this condition is likely to persist for a significant portion of the repayment period, I now find that the circumstances of debtor's illness are beyond her control and that debtor did not willfully or negligently contribute to her default. The circumstances of this case satisfy all three prongs of the *Brunner* test, and I find that requiring debtor to repay these student loans would impose an undue hardship on debtor. Thus, the student loans are a dischargeable debt in this bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B).

An Order consistent with this Memorandum Opinion will be entered this date.