**In re Cecil E. WILSON, Jr., and Naomi Sue Wilson, Debtors.**

**Naomi Sue WILSON, Plaintiff,**

v.

**MISSOURI HIGHER ED. LOAN AUTHORITY and/or Missouri Student Loan Program, and/or Student Loan Service Center, Defendants.**

**Bankruptcy No. 93–26076–A.**
**Adv. No. 94–2066–A.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Aug. 17, 1994.

---

Juanita M. Jackson, Norfolk, VA, for debtors.

Dennis T. Lewandowski, Kaufman & Canoles, P.C., Norfolk, VA, for defendants.

## MEMORANDUM OPINION

DAVID H. ADAMS, Bankruptcy Judge.

The debtor, Naomi Sue Wilson, came before the Court on July 19, 1994, seeking a hardship discharge of her student loan obligation to the defendants, collectively known as MOHELA, pursuant to 11 U.S.C. § 523(a)(8)(B). This is a core matter and the Court has jurisdiction by virtue of 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I).

## FINDINGS OF FACT

The debtor owes approximately $4,357.11 to MOHELA for educational loans which allowed the debtor to obtain a B.S. degree in Business Administration from Missouri Valley College. The debtor made regular monthly payments of $66.92 (adjusted downward from initial monthly payments of $70.32) to the defendants until April, 1993. In April, 1993, the debtor married Cecil E. Wilson, Jr., her co-debtor, an enlisted serviceman in the United States Navy, and moved with him to Tidewater, Virginia. Prior to her marriage, the debtor was last employed by GMAC, where her final salary was approximately $21,000 per year.

After marrying and moving to Virginia Beach, the debtor sought and obtained a forbearance from MOHELA and was granted a six-month deferment through December, 1993, of her required monthly payments on her student loan.

The debtor testified that she was unable to find a permanent position when she moved to Virginia, and worked as a temporary employee at various firms. The debtor learned she was pregnant in October, 1993. Due to early difficulties with her pregnancy, the debtor cut back on her working hours until she ceased working altogether at the end of November, 1993. Her child was born as a healthy infant on May 23, 1994, and the debtor made a deliberate decision to not return to work in order to care for her newborn at home. Her testimony was that her husband is an E–4 in the United States Navy, that in September, 1994, he plans to take an examination to qualify for a promotion to an E–5, and that regardless of whether he receives the desired promotion, he is expected to receive a pay increase in January, 1995. Further, her husband's duty with the Navy may result in his being sent out to sea in October, 1994.

The debtor stated that all members of her immediate family were healthy and that all of the medical bills related to the birth of her child were covered by insurance. In fact, the debtor did not testify to any unusual expenses, although her aging automobile will require some maintenance within the next several months. She testified that due to the high mileage of the vehicle, which will be lien-free in January, 1995, she may elect to purchase a new automobile around that time.

The debtor's deferment of monthly loan payments on her educational loan expired in December, 1993, and she has not made any payments on the loan since May, 1993. The debtor continues to voluntarily abstain from engaging in any sort of gainful employment in order to care for her healthy infant at home and did not testify about any intention to return to work.

### CONCLUSIONS OF LAW

Section 523(a)(8)(B) of the Bankruptcy Code states that:

[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Many courts, including this one, have examined the issue of "undue hardship". Although there is no definitive test to determine whether repayment of a student loan will impose undue hardship on the debtor, thereby permitting a discharge, relevant considerations include: (a) employment status; (b) other sources of wealth; (c) current income required to maintain a minimal living standard; (d) whether the debtor's education and skills are being used to their best advantage; (e) the health of the debtor and any dependents; (f) living expenses; (g) future financial resources; (h) good faith of the debtor; and (i) whether the bankruptcy was filed merely to avoid the student loan obligation. *In re Armijo*, 13 B.R. 175, 177–78 (Bankr.D.C.N.M.1981).

The Legislative History supporting § 523(a)(8)(B) suggests that a finding of undue hardship must be considered an exception to the rule. "Undue hardship" must mean more than unpleasantness associated with repayment of a just debt. Generally, there must be a showing of exceptional or unique circumstances—e.g., that the debtor must bear the burden of heavy medical expenses while living at the poverty level, or has become physically incapable of earning an income, or must care for dependent parents at the cost of extreme but good-faith self-deprivation to the debtor. Each undue hardship discharge must rest on its own facts, but dischargeability of student loans should be based upon a "certainty of hopelessness". *In re Lezer*, 21 B.R. 783 (Bankr. N.D.N.Y.1982).

■ Further, in order for a debtor to obtain a hardship discharge, she must show that the unique or extraordinary circumstances that created the hardship render it unlikely that the debtor will ever be able to honor her obligation. *In re Love,* 33 B.R. 753 (Bankr.E.D.Va.1983) (citing *In re Rappaport,* 16 B.R. 615 (Bankr.D.C.N.J.1981)). The court in *In re Rappaport* also found that undue hardship is generally associated with a total incapacity at the time of the filing of the petition and in the future to pay one's debts **for reasons not within the control of the individual debtor.**

In examining the debtor's situation with respect to the nine factors propounded in *In re Armijo,* 13 B.R. at 177–78, the Court finds as follows:

(a) Employment status. The debtor's current employment status is one which she has chosen. The Court recognizes the debtor's desire to play an active role in the development and rearing of her child. The debtor does not wish to place her child in the care of another while the debtor pursues employment opportunities. While this is understandable, it does constitute a conscious decision on the part of the debtor to not work. The debtor alleges that she would be unable to find suitable employment with compensation in excess of the cost of child care services. Although the debtor was unsuccessful in obtaining satisfactory employment initially upon her arrival in Virginia, and that she held several temporary clerical positions requiring skills below her level of training and education, it is reasonable to believe that the debtor's situation will change in the near future. The debtor has a bachelor's degree in business administration and has earned a good salary in the past. Should the debtor choose to resume working, she possibly could be successful in obtaining employment in her field, although she will not be limited in her search for suitable employment.

(b) Other sources of wealth. The debtor testified that her family has provided monetary assistance during the term of her unemployment. There is no formal agreement between the debtor and her family for the provision of assistance, however, and there is no obligation on the part of her family to continue assisting her in the future.

(c) Current income required to maintain a minimal living standard. The debtors' schedules reflect monthly expenditures which exceed their monthly income by $328.24. The reasonableness of the expenditures listed is addressed below. Even if all expenditures were deemed to be reasonable, however, the Court cannot escape the conclusion that any shortfall causing the debtors to live at a subminimal level is due to the choice of the debtor to not work.

(d) Whether education and skills are being used to their best advantage. It is clear that the debtor is not utilizing her training in business administration. Having obtained an education in such a field, the debtor will always have the potential to secure employment in that field. Her decision to remain at home and to not seek employment further highlights the extent to which the debtor has not utilized her education to the fullest extent possible.

(e) The health of the debtor and any dependents. The debtor testified that she, her husband, and her child are all in good health and have not required any medical care out of the ordinary.

(f) Living expenses. Although the debtors' schedules reflect a substantial discrepancy between monthly income and expenditures, the Court finds that the shortfall may not continue for much longer. Schedule J reflects a monthly installment loan payment of $250.66 for the debtors' automobile, and the debtor testified that this loan would be fully paid off in January, 1995. Although she indicated that the car had fairly high mileage and would require some repairs in the upcoming months, it is reasonable to believe that once the necessary repairs are made, the debtors will have an additional $250.66 per month to put toward their debts.

The schedules furnished by the debtors also reflect an expenditure of $100 per month for telephone charges. The debtor testified that she makes long-distance telephone calls to family on a fairly regular basis. The Court finds that the budgeted figure is exces-

sive, and that expenditure of $50 per month would be more reasonable.

Finally, Schedule J notes expenses of $200 and $100 per month for electricity and charitable contributions, respectively. Without entering specific findings as to the proper amounts, the Court suggests that these expenses could be lowered in order to free additional income for the payment of creditors.

(g) Future financial resources. The debtor testified that her husband will receive a pay raise in January, 1995, and that he will be eligible shortly for promotion to the grade of E–5. Any additional income will be available to pay the debt owed to defendants. Debtor also testified that, if her husband is sent to sea by the Navy for an extended tour of duty, she and her child will leave Virginia and move in with her parents. The debtor testified that her husband's deployment and her subsequent move would result in a termination of the Basic Allowance for Quarters (BAQ) and the Variable Housing Allowance (VHA) paid to the debtors by the Navy. Based on its knowledge of the military pay system, the Court finds that the debtor is mistaken, at least with respect to the payment of BAQ. A member of the armed services is entitled to payment of BAQ whenever he or she does not reside in base quarters. The debtor's husband's deployment and the debtor's choice to reside with her family will not affect their entitlement to BAQ. Although the debtor will continue to have expenses while living with her family, she should be able to realize substantial savings over her current expenses.

(h) Good faith of debtor. The good faith of the debtor is not questioned by this Court. The debtor made 44 payments on her student loan obligation prior to defaulting in April, 1993, and the Court finds that her desire to remain at home in order to care for her child is genuine and held in good faith.

(i) Whether the petition was filed merely to avoid the student loan debt. No evidence was presented that the debtor filed the petition solely to avoid her student loan obligation.

In accordance with the conclusions reached by the Court with regard to the above factors, this Court finds that the debtor's predicament does not rise to the level of a "certainty of hopelessness" required for discharge. The debtor has chosen to not seek employment in order to remain at home and raise her child. While this decision is commendable, the Court does not believe that it falls within the narrow exception carved out in § 523(a)(8)(B).

As discussed above, the debtor's circumstances are expected to change in several significant respects in the coming months. As a result, her financial condition will likely improve, thereby freeing additional capital for the payment of creditors. In addition, the debtor's employment status is subject to change at any time when she so chooses to alter her status. She possesses a college degree and held a high-paying job prior to her marriage to her co-debtor husband. Nothing is preventing her from re-entering the work force in the future. The debtor testified that she would be unable to offset the cost of child care by obtaining a higher-paying job. The Court finds, however, that the prospect of finding suitable employment, in her home or elsewhere, is not so remote as to constitute "unique" or "exceptional" circumstances, as required by the Code.

For the reasons stated herein, the Court finds that the debtor has not sustained the burden necessary to invoke the exception of an educational loan debt from discharge, and a nondischargeable judgment in favor of defendants will be entered contemporaneously in support of this opinion.