In re Denise C. JONES, Debtor.

Denise C. Jones, Plaintiff,

v.

National Payment Center, Signet Bank Student Loan Department, and all other loan companies concerned, Defendants.

Bankruptcy No. 97–35258–S.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 5, 1998.

Rand L. Gelber, Vienna, VA, for defendants.

Denise C. Jones, Prince George, VA, for plaintiff.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by Denise C. Jones (the

"Plaintiff") in the above named Adversary Proceeding. In the complaint, the Plaintiff asks that the Court declare her otherwise non-dischargeable student loan debt to be dischargeable because of the undue hardship which would be placed on her due to the repayment of the debt. The Plaintiff bases the hardship on the apparently incurable medical conditions known as Chronic Fatigue Syndrome and Fibromyalgia from which she allegedly suffers. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I); venue is proper under 28 U.S.C. § 1409. Upon consideration of the parties' pleadings, and after a trial held on this matter on September 17, 1998, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The Plaintiff filed a Chapter 7 petition with this Court on July 30, 1997; she received a discharge of her debts on November 7, 1997, and the case was closed on December 9, 1997. On October 27, 1997, the Plaintiff filed a complaint with this Court, asking the Court to include her student debt in the debts to be discharged. The complaint was filed against and properly served on the National Payment Center, Signet Bank, and all other student loan companies concerned (the "Defendants"). In the complaint, which included numerous medical records, the Plaintiff stated that she had watched herself go from a perky, ambitious woman to a very fatigued and depressed individual because of two conditions: Fibromyalgia and Chronic Fatigue Syndrome. Because of these conditions, which the Plaintiff claimed to be nontreatable and incurable, the Plaintiff stated that she had lost many jobs, had to quit school, and cannot hold down a full-time job. The Plaintiff asked the Court to discharge her student loan debt because of the undue hardship associated with the repayment of this debt. The Defendants timely answered the complaint and stated that the Plaintiff had failed to state a claim for which relief can be granted. A pretrial order governing discovery and other matters was entered by the Court on February 26, 1998.

The Plaintiff was generally unwilling to comply with Defendants' discovery requests, and when she did respond was not very forthcoming with information. On March 17, 1998, Defendants served the Plaintiff with interrogatories and requests for admission; the Plaintiff waited several months to respond, and when she did finally respond, the information she provided was not very helpful. She answered "information unavailable at this time" to several of the interrogatories and provided the following response to Defendants' requests for admission: "Unable to answer Requests for Admissions at this time." On May 12, 1998, the Defendants filed a Motion for Sanctions against the Plaintiff for her untimely and incomplete responses to discovery. The Court has not ruled on this Motion, in part because the Defendants have not requested a hearing on the Motion nor have they taken any action on the Motion since it was filed. The following information did come out of Plaintiff's responses: she is employed part-time, she suffers from Chronic Fatigue Syndrome, which may be permanent, she is taking Prozac and Trazadone as well as vitamins and herbs, she is under a doctor's care, she has no insurance, she lives with her parents, and she is unable to hold down a full-time job.

The Court was not provided with much information or details about the student loans obtained by the Plaintiff. It appears that three separate student loans were obtained: one in July of 1992, one in August of 1993, and one in July of 1994. Defendants' counsel stated during the trial that the amount due on the loans is approximately $16,000.00.

During the trial, the Court learned the following information from the Plaintiff's testimony. Currently, the Plaintiff is employed on a part-time basis by the American Family Fitness Center; she works 20–25 hours per week, earns $7.00 per hour,

and has worked there for over a year. The Plaintiff is currently living at home, has no car, has no health insurance, and has not applied for nor received any type of public assistance. The Plaintiff pays no rent; her monthly expenses include helping her parents pay for some of the home-related bills, medical expenses for her treatment, and personal items including clothing and toiletries. The Plaintiff stated that she has lost every job and had to quit school at Virginia Commonwealth University (where she was on the Dean's List) because of her illness. Her medical conditions have not improved over time and have completely taken over her life, and because she is unable to work full-time, Plaintiff claims she is unable now to pay off the student debt. Plaintiff did state that she is attending support groups and staying under a doctor's care, and that maybe in the future, if her conditions improve, she will be able to go back to school, obtain a degree, get back on her own two feet, and pay her bills.

Following the trial, during which the Court received the Defendants' trial brief, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

### I. Relevant Bankruptcy Code Provision

#### A. Seven–Year Period

■ The relevant Bankruptcy Code (the "Code") section is 523(a)(8). This section provides as follows:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.[1]

There is no issue as to the seven-year period in this case. This Court has stated that it was the clear intent of Congress to allow debtors to discharge student loans in cases in which more than five years (the law is now seven years) have elapsed since the notes executed on behalf of those loans first became due. *See In re Ziglar*, 19 B.R. 298, 300 (Bankr.E.D.Va.1982). The record indicates that the three loans were applied for on July 27, 1992, August 4, 1993, and July 31, 1994. The petition for bankruptcy was filed on July 30, 1997. Because all three loans obviously first became due after the dates on which they were applied for, and because these due dates are not more than seven years before the petition date, the loans in issue here are not excepted from discharge under subsection (A) of § 523(a)(8).

#### B. Undue Hardship

■ The Plaintiff claims that she is entitled to a discharge of her student debt because of the undue hardship associated with her medical conditions and her inability to repay the debt. Many courts, including this one, have examined the issue of undue hardship and have come up with various factors and tests. Although there

---

1. On October 7, 1998, the statute was amended to eliminate the existing exception to the non-dischargeability provisions for educational loans which first became due more than seven years before the filing of the bankruptcy petition. As amended, the section now makes all student loans non-dischargeable in cases under Chapters 7 and 13 unless excepting the debt from discharge would impose an undue hardship on the debtor and the debtor's dependents. This amendment applies only with respect to cases commenced after October 7, 1998, the date of enactment. Thus, it has no bearing on the case at bar as it was commenced on July 30, 1997.

is no definitive test to determine whether repayment of a student loan will impose such hardship on the debtor, thereby permitting a discharge, this Court, in *In re Wilson*, 177 B.R. 246 (Bankr.E.D.Va.1994), stated that nine relevant factors must be considered. Other courts, including the Western District of Virginia, have adopted a three-part test which was set out by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2nd Cir.1987). The three factors in the *Brunner* test, minimal standard of living, additional circumstances such as medical condition, and good faith, are all considered below.

 Generally speaking, the legislative history of the provision suggests that a finding of undue hardship is an exception to the rule; it must mean more than unpleasantness associated with repayment of a just debt. Each undue hardship discharge must rest on its own facts, but dischargeability of student loans should be based upon a "certainty of hopelessness." *In re Lezer*, 21 B.R. 783 (Bankr.N.D.N.Y. 1982). Further, in order for the debtor to obtain a hardship discharge, he or she must show that the unique or extraordinary circumstances which created the hardship render it unlikely that the debtor will ever be able to honor her obligation. *See In re Love*, 33 B.R. 753 (Bankr. E.D.Va.1983). Undue hardship is generally associated with a total incapacity at the time of the filing of the petition and in the future to pay one's debts for reasons not within the control of the individual debtor. *See In re Rappaport*, 16 B.R. 615 (Bankr. D.N.J.1981).

What follows is an examination of the Plaintiff's situation with respect to the nine factors propounded in the *Wilson* case:

(A) Employment status. Plaintiff is currently employed part-time by American Family Fitness Center; she works 20–25 hours per week, makes $7.00 per hour, and has worked in this capacity for over a year. No details were provided as to Plaintiff's specific job duties.

(B) Other sources of wealth. In her responses to interrogatories, Plaintiff states that she received unemployment benefits from February of 1997 to July of 1997, but provides no amounts. It appears that the Plaintiff has not sought out public assistance which indeed may be available to her.

(C) Current income required to maintain a minimal living standard. No evidence was offered as to this amount.

(D) Whether education and skills are being used to their best advantage. No evidence was offered as to this issue.

(E) Health of debtor and any dependents. As provided above, Plaintiff states that she suffers from Fibromyalgia and Chronic Fatigue Syndrome, which may be permanent and which appear to have no treatment or cure. Because of her medical conditions, Plaintiff stated that she had to quit school, has lost many jobs, and is now only able to work part-time.

(F) Living expenses. Plaintiff has minimal expenses as she is living with her parents and pays no rent. Her expenses include her medical bills, groceries, a portion of the utilities, clothing, and personal items. The Plaintiff did not provide the Court with much detail as to these expenses or amounts.

(G) Future financial resources. Other than current employment, Plaintiff offered no evidence of any.

(H) Good faith of the debtor. There is no evidence of any bad faith on the part of the Plaintiff here.

 (I) Whether the bankruptcy was filed merely to avoid the student loan obligation. The purpose of Congress in providing the seven-year period was to prevent student borrowers from escaping repayment of their loans by filing for bankruptcy after the loans became due. *See In re Gibson*, 184 B.R. 716 (E.D.Va. 1995). No evidence was presented on

whether Plaintiff filed to avoid repayment of the student debt.

■ As stated above, in order for the Plaintiff to obtain a hardship discharge, it is the Plaintiff's burden to show that the unique or extraordinary circumstances which created the hardship render it unlikely that the debtor will ever be able to honor her obligation; in other words, there must be a certainty of hopelessness as to the repayment of the debt. It is the Court's opinion that the Plaintiff has not carried her burden and has not established grounds for a complete discharge of her student debt. The Plaintiff is currently employed and is making money and has been working for over a year; Plaintiff herself even stated that her situation may well improve over time so that she will be able to work full-time and pay off the debt. Plaintiff's symptoms may be diminishing as they did not preclude her from defending herself in this action, testifying under direct and cross examination, and making arguments. In addition, Plaintiff has not sought any public assistance which may be available to her and which may aid her in the repayment of her obligations. Thus, Plaintiff has not proven to the Court that her student debt should be dischargeable, and has not persuaded the Court that she cannot reasonably be expected to make any repayments on her outstanding loans now and in the foreseeable future. As provided below, however, the Court does find that due to her medical condition, part of her debt is dischargeable.

## II. Discharge of Portion of Student Loan Debt

### A. Bankruptcy Court's Authority to "Split" the Debt

■ Several courts have addressed the issue of whether discharge under § 523(a)(8)(B) is an all or nothing proposition. Some courts have held that the total educational debt is either dischargeable or non-dischargeable. *See In re Shankwiler,* 208 B.R. 701 (Bankr.C.D.Cal.1997); *In re*

*Hinkle,* 200 B.R. 690 (Bankr.W.D.Wash.1996). Other courts have recognized a Bankruptcy Court's equitable power to discharge a portion of the debt, while leaving the remaining amount non-dischargeable. *See Matter of Rivers,* 213 B.R. 616 (Bankr.S.D.Ga.1997); *In re Cheesman,* 25 F.3d 356 (6th Cir.1994); *In re Ammirati,* 187 B.R. 902 (D.S.C.1995). The Court agrees with the latter cases which recognize a Bankruptcy Court's ability to order a partial discharge of a student loan under certain circumstances. The partial dischargeability or other modification of a student loan debt accomplishes Congress' purpose of providing debtors with a "fresh start" while maximizing the repayment of the debt.

In *In re Heckathorn,* 199 B.R. 188 (Bankr.N.D.Okla.1996), the Court explained that by themselves, the words undue hardship suggest a matter of degree; financial hardship is not all or nothing, but is more or less, and the load may be made more bearable by reducing rather than eliminating it. The *Heckathorn* Court stated that it was following the rule of *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), stating that a court should not read and apply a statute in a manner which leads to an absurd result:

> Such all or nothing rule would in some cases result in insufficient repayment, in others in insufficient discharge, regardless of a debtor's particular circumstances including degree of hardship and future prospects—a result which would be arbitrary and fortuitous and for purposes of § 523(a)(8)(B) absurd.

199 B.R. at 196. The Court agrees that allowing partial discharge of student loans is the more equitable approach; treating student loan dischargeability as an all or nothing proposition would yield absurd results in certain circumstances. Thus, the Court can, at its discretion, excuse any portion of the Plaintiff's student loan obligation which would create an undue hardship, and can recommend a payment plan which will lead to the reduced obligation

being paid in full. *See In re Bakkum,* 139 B.R. 680 (Bankr.N.D.Ohio 1992). This Court reached a similar but not identical result in *In re Love,* 33 B.R. 753 (Bankr. E.D.Va.1983). Although the debt was not discharged in that case, the Court, based on the current hardship facing the debtor, directed that the amount of the debt be limited to the unpaid principal with the commencement of repayment to be deferred until conditions improved.

**B. Discharge of Portion of the Student Debt**

■■■ The Court has weighed the hardship expressed by the Plaintiff, and in light of its authority discussed above, finds that $6,000.00 of the approximate $16,-000.00 debt, all remainder of loans, all interest, and all contractual attorney's fees arising from this litigation or other pre-petition collection efforts are discharged; the remaining $10,000.00 of the debt is non-dischargeable. Because of her alleged current, severe medical condition which prevents her from maintaining full-time employment, it is not likely that the Plaintiff will be able to make any significant repayment of the loan over the next few years. The Court directs the following repayment plan which is to be carried out free of interest: the Plaintiff is to pay the Defendants $30.00 per month for 12 months, $40.00 per month for the following 12 months, and then $50.00 per month thereafter until the non-dischargeable debt is repaid. The Court retains jurisdiction over this matter for the purposes of following the progress of the payments, following the Plaintiff's medical condition and progress, and adjusting the repayment schedule if conditions change.

If the Plaintiff's condition improves and she is able to obtain full-time employment, then the repayment schedule is to be readjusted such that monthly payments increase by 50% (i.e. if Plaintiff is paying $30.00 per month, and obtains full-time work, payment will increase to $45.00 per month; if paying $40.00 per month, increase to $60.00 per month; if paying $50.00 per month, increase to $75.00 per

month). On the other hand, if Plaintiff's condition worsens, the parties could ask the Court to alter the repayment plan. The Court views the above "splitting" of the debt and the above repayment plan as the most equitable way to resolve this matter. In addition, if the repayment schedule does not work out, nothing prevents the Plaintiff from filing a new § 523(a)(8)(B) complaint in the future based on changed circumstances. *See In re Sobh,* 61 B.R. 576 (Bankr.E.D.Mich. 1986).

*CONCLUSION*

The Court thus holds that $10,000.00 of the approximate $16,000.00 debt owed to the Defendants is non-dischargeable, while the remaining $6,000.00, along with all interest, is dischargeable. The Plaintiff should contact the Defendants within fourteen (14) days of the date of this decision to make a payment schedule in accordance with this Opinion. The Court retains jurisdiction over this matter in the event of the arising of prospective egregious circumstances which would warrant an increase or diminution in the amount of the periodic payments.