**In re Denise C. JONES, Debtor.**

**Denise C. Jones, Plaintiff,**

**v.**

**National Payment Center, Signet Bank Student Loan Department, and all other loan companies concerned, Defendants.**

**Bankruptcy No. 97–35258–S.**
**Adversary No. 97–3175.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

March 16, 2000.

Denise C. Jones, Prince George, VA, pro se debtor.

Rand L. Gelber, Leesburg, VA, for the defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This hearing arises out of a remand from the District Court following cross-appeals of a decision of this Court by plaintiff/debtor Denise Jones ("Jones") and defendant/creditor Educational Credit Management Corporation ("ECMC").

This Court held, in a decision entered in November 1998, that 1) a student loan may be partially discharged under the "undue hardship" discharge of 11 U.S.C. § 523(a)(8)(b); 2) Jones' then—$16,000 student loan obligation would be discharged in the amount of $6,000, leaving a $10,000 balance to be repaid; 3) Jones may file an additional complaint asking the court to reconsider her repayment schedule if her circumstances change; and 4) the Court retained jurisdiction for the purpose of adjusting the repayment schedule if conditions changed.

The District Court, on appeal, upheld this Court's decision, except for that portion which fixed the amount of Jones' debt that was to be discharged. As to this portion of the decision, the District Court remanded with instructions for this Court to determine Jones' actual monthly expenses. In his opinion, Judge Spencer remarked that:

> The only evidence of [Jones'] medical condition was her own testimony. Even though she stated that she was unable to hold down a full-time job, Ms. Jones did not prove that she was unable to make monthly payments on the full debt with her part-time wages, as no evidence was presented as to her exact monthly expenses. Thus, having determined a partial discharge is allowed, there is nothing in the record to support the amount chosen by the court to be discharged. It is for this reason that the Court remands the case so that the bankruptcy [court] can fully develop the record before deciding to partially discharge the debt due to Ms. Jones' medical condition.

In light of Judge Spencer's opinion, this Court finds that it must decide, not only what Denise Jones' monthly loan payments will be, but must also revisit the issue of how much, if any, of Jones' obligation should be discharged. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The Court asked Jones a series of questions in order to determine what her cur-

rent monthly net income is, and what her expenses are. From this information, the Court determined that Ms. Jones has the ability to repay $13,000 of her student loans over time. Accordingly, it declares $13,000 of her student loans to be non-dischargeable. Jones shall have until January 2006 to repay this amount. During this time, interest shall accrue at the rate of 8.25%, which is currently the rate at which federal Stafford loans are capped.

## DISCUSSION

■ Ms. Jones testified that she currently lives at home and has very few assets. She states that she would like to move into a place of her own, perhaps by the middle of this year. In furtherance of this goal, she has been buying various items that she believes she will need: plates, utensils, furnishings, a wardrobe. She has been employed full-time since May 1999 at a job that pays $12/hour. This translates into a net monthly income of $1612, assuming a 4.3 week month. Out of this monthly income, Jones pays for the following expenses: $200 for utilities, $200 for food, $50 for auto insurance (although the debtor does not own a car, she uses her father's car and helps defray the insurance costs), $100 for lunches during work days, $60 for entertainment, $110 in clothing, $30 for a cellular phone, $60 for gas, and $50 for medical expenses. This leaves approximately $750 each month after the debtor has paid for the above expenses.

■ Thus, Jones comes before the Court today with a very different financial picture than she had a year ago. When this Court originally discharged $6,000 of her student loan, Jones was working part-time for only $7/hour. She now works full time at a wage of $12/hour. Her monthly gross income has increased almost 3.5 times. She also testified that her health has improved somewhat, and that she had not seen a doctor since February 1999. These facts strongly suggest that Jones is capable of repaying more of her student loan than was originally believed. Several of the *Wilson* factors now weigh against granting Jones a hardship discharge. *See*

*Wilson v. Missouri Higher Educ. Loan Auth. (In re Wilson)*, 177 B.R. 246, 248 (Bankr.E.D.Va.1994) (listing nine factors a court should consider in deciding whether to grant a hardship discharge). One such factor is employment status. Jones is now gainfully employed and earns a good wage, whereas last year she was able to work only part-time for a much lower wage. A second factor is current income required to maintain a minimal living standard. As discussed, Jones currently has about $860/month in expenses. Some of her needs are taken care of for her because she lives with her parents, although the Court does not penalize Ms. Jones for minimizing her expenses through this living arrangement. Another factor to consider is whether the debtor's education and skills are being put to their best use. She testified that she holds an associate's degree in science, but there was no evidence of whether this degree might enable her to earn a higher wage than she currently is earning. This factor militates against granting the discharge because it is Jones' burden to prove that repayment would constitute an undue hardship.

Some of the other factors listed in the *Wilson* decision weigh in favor of granting Jones a partial or complete discharge of her student loans. Jones' health is an important consideration. She testified that it is still somewhat fragile, and her prognosis is uncertain. Apparently, due to her constant fatigue, she spends much of her time away from work sleeping. She is also taking an assortment of medications, including the antidepressant Prozac. While she states that she feels better than she did a year ago, her condition could either worsen or improve at any time. The Court finds that Jones' testimony is sufficient evidence of the current state of her health, *see O'Brien v. Household Bank FSB (In re O'Brien)*, 165 B.R. 456, 459 (Bankr.W.D.Mo.1994) and finds that this factor militates in favor of granting a hardship discharge. Another consideration is the debtor's future financial resources. Jones did not testify to anticipating a raise

or coming into money at some time in the near future. However, she did testify that her expenses will increase when and if she moves out of her parents' house. Specifically, she stated that she will need $500 per month in rent and will incur the expense of owning her own automobile. The Court finds from this testimony that her future financial resources may stay the same, although the demands on those resources will increase. The Court views this factor as weighing in favor of granting a hardship discharge.

Two remaining factors are the good faith of the debtor, and whether the bankruptcy was filed merely to avoid the student loan obligation. Jones did not specifically address either issue in her testimony. The good faith of the debtor may be measured by whether she ever made any payments on her student loans, as well as by her efforts to obtain gainful employment, maximize her income, and minimize expenses. See O'Brien, 165 B.R. at 459. Jones did not offer any evidence of her payment history, although there was testimony that her income tax refunds were involuntarily withheld and used to help repay the loans. The fact that she lives with her parents and has gone from a part-time job to a full-time job with a better wage convinces the Court that she has made a good faith effort to maximize her income while minimizing expenses. On the issue of whether the bankruptcy was filed merely to avoid repaying the student loan, the Court finds that when she filed for bankruptcy, she had debts other than those represented by her student loan. From this, the Court concludes that she was not motivated solely by the desire to discharge the student loan. These two factors, the debtor's good faith and motivation in filing bankruptcy, weigh in favor of granting the hardship discharge.

In light of the evidence presented, and with Judge Spencer's instructions in mind, the Court finds that Ms. Jones should be required to repay $13,000 of her student loans. This appears to be a fair and equitable resolution of the dischargeability issue. The fact that Jones now earns a higher wage and has a higher net income than she did when she first came before this Court does not mean that she is no longer entitled to a partial hardship discharge. While it is true that she has over $700 left over each month after paying for necessary expenses, this is largely due to the fact that she is presently dependent upon her parents. In considering whether a debtor can maintain a minimal standard of living based on current income and expenses, courts differ as to how they treat the fact that a debtor relies on parental support. Compare In re O'Brien, 165 B.R. at 459 (fact that debtor's mother provided her with car and subsidized expenses helped persuade the court that debtor could not maintain a minimal standard of living if forced to repay student loans) with In re Wilson, 177 B.R. at 250 (debtor who was to move in with parents would realize substantial savings and have fewer demands on future financial resources) and Law v. Educational Resources Institute, Inc. (In re Law), 159 B.R. 287, 294 (Bankr. D.S.D.1993) (debtor's financial resources for the foreseeable future included support received from parents). This Court finds that it would be inappropriate to treat all of the savings Jones realizes by living with her parents as available to pay her student loan debt. Jones testified that she plans to move out of her parents' home sometime this year, at which time her expenses will increase drastically. More of her net income will be needed to maintain a minimal standard of living, as her parents will no longer be providing her with shelter and transportation. There is no reason not to consider these facts in the minimal standard of living calculus. The Wilson decision specifically calls for examining a debtor's future financial resources. See 177 B.R. at 250. The leading Brunner decision, which established a three-part test for determining undue hardship, calls for looking ahead to determine whether in the future a debtor's circumstances will change so as to allow him to repay the

student loan. *See Brunner v. New York State Higher Education Services (In re Brunner)*, 831 F.2d 395, 396 (2d Cir.1987). These considerations lead the Court to consider Jones' anticipated future expenses in calculating the amount she should be required to repay each month.

Jones apparently suffers from a chronic illness that can be debilitating. In order to keep her expenses manageable she lives with her parents. If she did not do this, she would in all likelihood have very little left over each month after paying her basic expenses. The Court feels that to hold her student loan non-dischargeable would penalize Jones for simply doing the best she can under the circumstances. Jones' parents are retired and on a fixed income, and they cannot support her indefinitely. It is therefore prudent for Jones to build her savings and prepare for the day when she will no longer be able to live with her parents.

■ The Court will allow Jones to continue building her savings so that she may become self-sufficient by discharging all but $13,000 of her student loans and giving her approximately six years to repay this amount. During repayment, interest will accrue on her unpaid balance at a rate of 8.25%. The remaining balance of her loans, including all interest, principal, fees, collection costs, and penalties shall be discharged. Should her circumstances again change, she may, as set forth in this Court's original decision in November 1998, petition this Court for a reconsideration of this repayment schedule. The Court feels that this is an appropriate resolution of the dischargeability issue because it requires Jones to devote a portion of the savings she realizes by living with her parents to loan repayment, while still allowing her to eventually become independent of her parents. The maximum repayment period for a federal Stafford loan is normally 10 years, and the Court does not

wish to impose a shorter amortization period in this case. Because Jones' expected graduation date was May 30, 1995 and repayment would normally begin following a six-month grace period from that date, requiring full repayment of the non-dischargeable amount by January 1, 2006 will give her the full benefit of the 10–year period.[1] At 8.25% interest, Jones would be able to amortize the $13,000 obligation under this repayment plan with regular monthly payments of only $235. She is of course free to devote more of her current income to repayment now, and retire the loan much sooner.

The Court will enter an appropriate Order in conformity with this Memorandum Opinion.

---

1. In fact, Jones stated in her initial complaint that she left school before her graduation date due to her illness. Because neither party presented evidence of when Jones actually left school, the Court determines her repayment period based on the expected graduation date in the promissory notes for the loans.