**In re Dorinda HOYLE, Debtor/Debtor,**

v.

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, Defendant.**

Bankruptcy No. 95–14634DWS.
Adversary No. 95–0919.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 9, 1996.

Barry D. Kleban, Adelman Lavine Gold and Levin, Philadelphia, PA, for Debtor.

K. Kevin Murphy, PHEAA, Harrisburg, PA, for Pennsylvania Higher Education Assistance Agency.

## MEMORANDUM OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Complaint to Determine Dischargeability of Student Loan Pursuant to Section 523(a)(8)(B) ("Complaint") of Plaintiff/Debtor, Dorinda Hoyle ("Debtor"). Defendant, Pennsylvania Higher Education Assistance Agency ("PHEAA") filed an answer ("Answer") to the Complaint and trial of this matter was held. For the reasons set forth herein, we find in favor of Debtor and against PHEAA; Debtor's student loan obligations to PHEAA are discharged pursuant to 11 U.S.C. § 523(a)(8)(B).

## BACKGROUND

Debtor is forty-five years of age. Following graduation from high school in 1968, she worked for approximately one year in a wool factory operating a "brush" machine. After being layed off from this job, she secured various other factory jobs, but did not retain any of these positions for more than a short period of time.

In 1969, Debtor got married. She and her husband had four children. During the marriage, her husband abused her both mentally and physically. The marriage ended abruptly in 1978 due to the husband's unexpected death. Following his death, Debtor experienced extreme depression and contemplated suicide. She obtained some assistance battling these problems through her church. Her suicidal thoughts have ceased; however, she continues to suffer from chronic depression and finds herself emotionally unstable. She believes she is in need of professional help to deal with the depression.

At the time of her husband's death, Debtor's youngest son was only six months old. Shortly after the husband's death, Debtor began receiving social security for the children.

Except for sporadic part-time jobs,[1] Debtor did not work from 1978 until 1991. Beginning June 1984 through May 1985, Debtor attended and graduated from the Wilfred Academy of Cosmetology. Debtor never sought employment in the field of cosmetology because she believed her skills were inadequate and she suffers from back pain which made it difficult for her to stand for long periods of time.

In 1990, Debtor attended and completed a program in stenography at the John F. Kennedy Vocational Training School for Adults through which she acquired the ability to type 45 words per minute. However, despite her efforts, she was unable to obtain an office job.

In 1991, Debtor obtained regular part-time employment as a cashier with Thriftway Supermarkets ("Thriftway"). She still retains this job, traveling to and from work on the

---

1. According to Debtor's testimony, she worked at Gino's in 1975. However, she was fired from this job. She also worked intermittently at a nursing home and a pharmacy.

bus. Debtor works at this job approximately 15 to 24 hours per week, earning $10.40 per hour. Through her employment, she receives partial coverage for her dental, eye and medical care; however, the medical care only covers hospitalization. While Debtor has sought other employment as a cashier, her search has not been successful. Debtor testified that she applied at least twice for employment at Strawbridge & Clothier and was not offered a job. She also applied at Woolworth's and at Rite Aid. No offer was made at Woolworth's and she learned that Rite Aid pays only $4.00 per hour. Debtor's gross monthly income averages $988.00, but varies from month to month depending upon the amount of hours she is given at Thrift-way. Her average net monthly income is $781.33. For 1994 and 1995, Debtor received income tax refunds of approximately $2,350.00.

Three of Debtor's children, ages twenty-five, twenty-two and eighteen years old, live with Debtor in her apartment. *See* Exhibit P–5. Only the youngest child, Demetrius, is still in school, but the likelihood of him continuing in school until graduation seems unlikely. The other two children, Tiffany and Mark, dropped out of high school; neither of them has a job or contributes to the household expenses. Debtor's youngest son still receives Social Security payments amounting to $282.00 per month. These payments will cease if he does not continue in school. He provides the bulk of these payments to Debtor to pay for the rent.

Debtor's rent is $249.00 per month. She lives in public housing leased by the Philadelphia Housing Authority. She testified that her rent would not decrease even if Tiffany and Mark moved out because only her youngest son, Demetrius, and she are listed on the lease.

Debtor's total monthly expenses are $1,013.00. These expenses include the $249.00 which she pays in rent. Her other expenses consist of the following: $35.00 for telephone expenses; $250.00 for food; $33.33 for clothing; $30.00 for laundry and dry-cleaning; $15.00 for newspaper, magazines and books; $158.33 for medical care and expenses; $138.00 for transportation; and $105.00 for other expenses such as "personal hygiene, non-food items, household repairs and upkeep." Debtor does not spend any money on recreation or entertainment and no extra money is spent at the holidays. Debtor does not own a car and has no retirement savings. As of March 29, 1996, she had only $75.00 in her savings account.

Debtor testified that while she listed her monthly telephone expense as $35.00 per month, her actual monthly telephone bill is usually $100.00 or more per month due to her children's use of the telephone. She also testified that the $250.00 per month which she spends on food covers the cost of feeding herself and her three children.

As noted above, Debtor suffers from persistent back pain. She has dental problems and her eyesight is poor. She also suffers from sinus headaches and has ringworm that has not been treated. Her last physical was six years ago. Despite her age, she has not had a recent mammogram. Debtor has not taken care of her medical or dental needs because she simply has not had the money to do so.

In June of 1995, Debtor filed a Voluntary Petition for Relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). She took this action because collection actions were being taken against her and she was in jeopardy of being evicted by PHA. Debtor was granted a discharge on September 27, 1995 and her case was closed two days later. By Order dated November 6, 1995, Debtor's case was reopened to permit her to, *inter alia*, file her Complaint.

Debtor secured the loan which is the subject of this adversary proceeding to pay for the costs of attending Wilfred Academy of Cosmetology. The loan matured on December 1, 1985 and became due for repayment on December 20, 1985 in the principal amount of $2,500.00. During the repayment period, Debtor made payments totaling $669.54. She applied for and was granted hardship forbearances for the following periods: March 1, 1986 through August 31, 1986; June 1, 1987 through October 31, 1988; and January 10, 1994 through December 1, 1994. She has made no payments since September

8, 1987. The present balance of Debtor's loan obligation, including principal and interest, is $2,632.42.

DISCUSSION

 Debtor seeks a discharge of her loan obligation to PHEAA under Bankruptcy Code § 523(a)(8)(B). This section states, in pertinent part:

> (a) A discharge under section ... 727 of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* ॰ \* \*
>
> (8) for an educational ... loan made, insured, or guaranteed by a governmental unit, or may under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—
>
> \* \* \* \* \* \*
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

11 U.S.C. § 523(a)(8)(B). Pursuant to this section, a debtor is entitled to have his or her student loan obligation discharged only if repayment of such debt would impose an "undue hardship." In determining whether the facts before us give rise to an "undue hardship," as that term is used in § 523(a)(8)(B), we are bound to apply the three-part test enunciated in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987). *See Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir.1995) ("Brunner now provides the definitive, exclusive authority that bankruptcy courts must utilize to determine whether the "undue hardship" exception applies."). Under the *Brunner* test, undue hardship exists if the following three elements are satisfied:

> (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and

her dependents if forced to repay the loan;

> (2) additional circumstances exist indicating that this state of affairs is likely to persist for the significant portion of the repayment period for the student loans; and

> (3) the debtor has made good faith efforts to repay the loans.

*Faish, supra*, at 304–05 (*quoting Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987)). Debtor has the burden of establishing these elements. *Faish, supra*, at 306. Unless all three of these elements are satisfied, a discharge cannot be granted. *Id.*

#### (i) "Minimal" Standard of Living

 We turn to the first prong of the *Brunner* test, *i.e.*, whether Debtor has established that she "cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loan." For purposes of deciding this adversary proceeding, we conclude, based upon the record before us, that Debtor's only "dependent" is her youngest son. While Debtor's two oldest children are a drain on her resources, they cannot be termed "dependents" in the legal sense. They are over the age of majority and not in school. They could be working and contributing to the family income, but are not. While Debtor has chosen to assist them financially, she is under no legal obligation to do so. *See Stebbins–Hopf v. Texas Guaranteed Student Loan Corporation (In re Stebbins–Hopf)*, 176 B.R. 784, 787–788 (Bankr.W.D.Tex.1994) (although Debtor felt moral obligation to provide financial assistance to daughter and grandchildren, they were not her dependents). On the other hand, Debtor's youngest son is eighteen years of age and still in high school. At this point in time, he is a "dependent." [2]

The record shows that Debtor's average monthly net income is $781.33 while her

---

2. Even if Debtor's youngest son was not a "dependent," we would still conclude that Debtor is entitled to a discharge of her loan obligations to PHEAA since, while her monthly expenses would

be less, she would not have her son's contribution from his social security payment to use for rent. *See* discussion *infra* at 524.

monthly expenses are $1,013.00. Her youngest son contributes the majority of his monthly social security payment to pay for Debtor's rent which is $249.00 per month. With this contribution, Debtor has approximately $1,030.00 each month to cover her expenses, leaving an excess of only $17.00 each month. For the past two years, Debtor has also received an income tax refund of approximately $2,350.00.

Reviewing Debtor's monthly expenses, we find that, with the exception of the $250.00 per month which she spends on food, her estimated expenditures are reasonable or, in some cases, even low. The problem with Debtor's $250.00 monthly food expense is not that the amount is unreasonable, but that Debtor admits that she spends this amount to purchase food not only for herself and her youngest son, but also for her other two children who live with her. Since Debtor is not legally obligated to support these two children, her monthly food expenditures cannot include costs associated with supporting them. We, therefore, reduce Debtor's monthly food expenses by $50.00 to account for the amount which she has been spending on food for these two adult children.

Significantly, other than Debtor's monthly food expense, there is no evidence in the record that any of her other monthly expenses include costs associated with supporting these two older children. For example, Debtor estimates her monthly telephone expense at $35.00 per month even though her monthly telephone bills average $100.00 or more per month because she recognizes that the majority of such costs are incurred by her children and, as such, cannot be considered her monthly expense. In addition, Debtor testified that the rent for her apartment would be the same even if her two adult children did not reside there.

PHEAA argues that Debtor should be required to utilize the excess income which she has been spending on her two older children to repay her loan obligation to PHEAA.[3] While this argument may be facially appeal-

ing, we find that, under the circumstances of this case, it lacks merit.

Debtor has essential needs that are not being met. For example, she needs both medical and dental care. Her doctor has advised her that she needs to have X-rays taken and blood work performed. The dental work she needs will cost in excess of $1,000.00. She also needs an eye examination, not having had one since she was a child. She is having trouble reading and probably needs glasses. In addition, Debtor has been suffering for a substantial amount of time from depression. She is in need of professional help to address this problem. In determining whether Debtor can maintain a "minimal" standard of living while also paying her loan, we must take these needs into consideration. Debtor has estimated her monthly expenses for medical and dental care at $158.33. Based on Debtor's medical, dental and psychological needs, we think this amount is insufficient. Accordingly, rather than finding that Debtor has $50.00 "extra" per month pursuant to the reduction in her monthly food expenses, we allocate this amount towards her expenses for medical and dental care. Admittedly, we cannot force Debtor to use these funds for their intended purpose and, given her past history, she may well use them for another purpose. However, we cannot rule that she has "extra" money with which to repay her loans when we believe she has insufficient income with which to meet her basic needs.

Insofar as Debtor's other monthly expenses, we note that she did not allocate any money for recreation or entertainment, and estimates that she expends only $33.33 per month or $399.96 per year on clothes. This amount seems excessively low considering that Debtor must provide clothing for herself and her youngest son. Debtor also has no retirement or other savings of which to speak. In the event some unexpected expense is incurred, Debtor would have no means by which to pay for the same. Considering these circumstances, we believe that Debtor's estimate of her monthly expenses is

3. Although PHEAA makes this argument, Marlene Murray, who testified on its behalf, admitted that based on Debtor's current financial situation, if her loan was not in default, she would be entitled to a forbearance of her loan obligation.

less than it will cost for her to maintain a "minimal" standard of living. For this reason, we believe that Debtor's income tax refunds, to the extent she continues to receive them,[4] rather than providing her with monies that she can use to repay her loan, simply enable her to maintain a "minimal" standard of living.

■ PHEAA also argues that Debtor's student loan obligation should not be discharged because her annual gross income is above the poverty level.[5] This rationale assumes that the phrase "a 'minimal' standard of living" means living at the poverty level. This notion has been rejected by other courts; we reject it as well. *See Ammirati v. Nellie Mae, Inc. (In re Ammirati),* 187 B.R. 902, 906 (D.S.C.1995) ("minimal standard of living" is not co-extensive with living at poverty level), *aff'd,* 85 F.3d 615 (4th Cir.1996); *Correll v. Union National Bank of Pittsburgh (In re Correll),* 105 B.R. 302, 306 (W.D.Pa.1989) (discussed below). In discussing this issue, the court in *Correll v. Union National Bank of Pittsburgh (In re Correll),* reasoned as follows:

> We do not believe … that Congress intended a fresh start under the Bankruptcy Code to mean that families must live at poverty level in order to repay educational loans. Where a family earns a modest income and the family budget, which shows no unnecessary or frivolous expenditures, is still unbalanced, a hardship exists from which a debtor may be discharged of his student loan obligations. Use by the Bankruptcy Court of poverty level or minimal standard of living guidelines is not necessary to meet the congressional purpose of correcting "a few abuses of the bankruptcy laws by debtors with large

amounts of educational loans, few other debts, and well paying jobs, who have filed bankruptcy shortly after leaving school."

*Id. (quoting* H.R.Rep. No. 595, 95th Cong., 1st Sess., 133 (1977), reprinted in 1978 U.S.Code Cong. and Admin.News, p. 5787, 6094). We find this analysis persuasive. While Debtor's gross income level may be higher than the poverty level, she is living a frugal lifestyle. If forced to repay her student loan, she will not even be able to do that. No abuse of the Bankruptcy Code will remedied by relegating Debtor to a more austere lifestyle than the one she lives now.

The first element of the *Brunner* test is met. We turn to the next prong of the test.

(ii) Prospect for Change in State of Affairs

■ The second prong of the test requires us to determine whether "additional circumstances exist indicating that this state of affairs is likely to persist for the significant portion of the repayment period for [Debtor's student loan]." Discussing the purpose of this prong of the test, the bankruptcy court in *Elebrashy v. Student Loan Corporation,* 189 B.R. 922, (Bankr.N.D.Ohio 1995), stated as follows:

> The second prong of the Brunner test requires the debtor to show that the circumstances that preclude payments on the student loan are likely to persist for a significant portion of the loan repayment period. If those circumstances are transitory, and the debtor's situation will likely improve, requiring payment of the loan will not impose an undue hardship. This prong of the test recognizes that the borrower's education should, in most cases, provide increased income that will allow

---

**4.** There is no evidence in the record as to the likelihood that Debtor will continue receiving tax refunds or, if she does, that they will be in same approximate amount as her tax refunds for 1994 and 1995. Obviously, to the extent Debtor claims her youngest son as a dependent on her tax refunds and his status changes, the amount of her tax refund is likely to decrease.

**5.** Debtor's annual gross income, calculated by multiplying her monthly gross income of $988 by 12, is $11,856.00. The federal government's poverty threshold for a family of two in 1996 is $10,360.00. *See* Annual Update of the HHS Pov-

erty Guidelines, 61 Fed.Reg. 8286 (March 4, 1996). Interestingly, in *Bryant v. Pennsylvania Higher Education Assistance Agency,* 72 B.R. 913, 916 (Bankr.E.D.Pa.1987), Judge Scholl, noting that the federal poverty guidelines "are used as eligibility criterion for federal assistance programs," concluded that it is appropriate when comparing a debtor's income to the federal poverty guidelines for purposes of applying § 523(a)(8)(B) to utilize the debtor's net income rather than his or her gross income. Debtor's annual net income is only $9,459.96 so it is below the poverty level.

the loan to be repaid, even though immediately after graduation a student borrower's assets may be dwarfed by the size of the loan. Requiring the debtor to prove that his inability to pay will endure reflects the judgement that bankruptcy should not provide a means by which "frustrating and burdensome student loan payments" may be eliminated simply because steady employment is not forthcoming soon after a student completes his or her education.

*Id.* at 927. The circumstances which render Debtor unable to pay for her student loan while also maintaining a "minimal" standard of living are likely to persist for an indefinite time in the future. Debtor suffers from depression which she has not been able to overcome. This depression manifests itself in her outward demeanor; her affect is markedly flat. Debtor appears emotionally fragile, and mentally and physically spent. Debtor also continues to suffer from chronic back pain which limits the length of time she can be on her feet. These factors make it unlikely that Debtor will, in the foreseeable future, obtain a full-time job that pays her more than her part-time job at the Thriftway.

Furthermore, the training for which Debtor used the PHEAA loan at issue occurred more than ten years ago. Since that time, Debtor has never worked as a hairdresser. It is extremely improbable that she ever will. Therefore, Debtor's education has not increased her earning potential. In addition, while Debtor successfully acquired typing skills when she attended the John F. Kennedy Vocational Training School in 1990, those skills are now obsolete given the widespread use of computers.

One final point warrants attention. Debtor has admitted that she has little hope that her youngest son will remain in school. If he discontinues his education as expected, Debtor will no longer be entitled to claim him as a "dependent." Nevertheless, we do not believe this event will improve Debtor's ability to maintain a "minimal" standard of living. Debtor's son currently receives social security payments which he provides to Debtor to pay the rent. If he drops out of school, he will no longer receive these payments. Thus, while Debtor's cognizable expenses will decrease when her son is no longer her dependent, the amount of money which she will have available to pay her expenses will also decrease.

Considering all of the aforementioned circumstances, we conclude that Debtor has established the second element of the *Brunner* test. Her circumstances are unlikely to change in the foreseeable future.

(iii) Good Faith Effort to Repay Loan

■ The final inquiry is whether Debtor has made a good faith effort to repay her loan. In resolving this issue, we are to be "guided by the understanding that 'undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his control.'" *Faish, supra,* at 305 (citations omitted).

According to the evidence in the record, over ten years has passed since Debtor's loan originally became due. During this time, Debtor pursued and obtained three hardship forbearances and repaid over $650.00 of the loan. In an effort to improve her job marketability, Debtor attended the John F. Kennedy Vocational Training School. Thereafter, she attempted to obtain an office job using her typing skills, but her efforts proved fruitless. Since 1990, Debtor has worked diligently at her job at Thriftway. She has sought additional or other employment elsewhere, but her search has been unsuccessful. Debtor resides in public housing and lives a frugal lifestyle. She spends no income on entertainment or recreation and has no extra money for the holidays. There is no evidence that, during the last ten years, Debtor has ever lived the high life, taken the easy road or made an irresponsible decision affecting her ability to repay her loan. *See Goranson v. Pennsylvania Higher Education Assistance Agency (In re Goranson),* 183 B.R. 52, 57 (Bankr.W.D.N.Y.1995) (third prong of Brunner test met where evidence showed, *inter alia,* that debtor's inability to make more than minimal payments on student loans prior to bankruptcy "was a consequence of an inability to afford payments, rather than of irresponsible choices, high liv-

ing, or a manifest effort to take the easy way out"). Based on these findings, we conclude that Debtor has made a good faith effort to repay her loan and that her inability to repay the loan is due to circumstances beyond her control.

All three of the elements of the *Brunner* test are met. Debtor is entitled to a discharge of her loan obligation under § 523(a)(8)(B).

An Order consistent with the foregoing Memorandum Opinion will be entered.