**In re Julie Kay DOTSON–CANNON, Debtor.**

**Julie Kay DOTSON–CANNON, Plaintiff,**

**v.**

**DEPARTMENT OF EDUCATION, Sallie Mae, and Texas Guaranteed Student Loan Corporation, Defendants.**

Bankruptcy No. 93–50500.
Adversary No. 96–5008.

United States Bankruptcy Court,
W.D. Missouri.

March 14, 1997.

Bruce E. Strauss, Merrick, Baker, Hufft & Strauss, Kansas City, MO, for Plaintiff.

Craig F. Young, Calame, Linebarger, Graham & Pena, L.L.P., Austin, TX, for Texas Guaranteed Student Loan.

Judith M. Strong, U.S. Attorney's Office, U.S. Department of Justice, Kansas City, MO, for Department of Education.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtor Julie Kay Dotson–Cannon ("debtor" or "Ms. Dotson") asks this Court to find that her student loan debt is dischargeable pursuant to 11 U.S.C. § 523(a)(8)(B). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the debt is dischargeable.

## FACTUAL BACKGROUND

This adversary proceeding has had a rather tortuous journey, therefore, a brief history is in order. On October 1, 1993, debtor filed a Chapter 7 bankruptcy petition. She was represented by Jeffrey M. Martin and Warren W. Wear of Access Law Center, Kansas City, Missouri. Ms. Dotson listed debts totaling $23,931.39 on her bankruptcy schedules, of which approximately $12,736.64 represents debt due on her student loans. According to debtor, she was advised by Access Law Center that the discharge obtained in her bankruptcy proceeding would serve to discharge those student loans. She received her discharge on March 11, 1994, and her bankruptcy case was closed. Thus, debtor was surprised when she continued to receive billings on these student loans after her discharge. She contacted Access Law Center, and an attorney there assured her he would assist her in obtaining a discharge of her student loan debt. After several additional contacts with the law center, Mr. Warren Wear finally filed this adversary proceeding on March 21, 1996, alleging that the student loans were more than seven years old and that requiring Ms. Dotson to repay the debt would impose an undue hardship. After a number of continuances, the Court set this matter for trial on October 31, 1996. Mr. Wear failed to appear and judgment was entered in favor of the defendants on November 5, 1996.[1]

Ms. Dotson contacted this Court by letter on December 11, 1996, indicating that she had been unable to contact Mr. Wear, and that Mr. Wear failed to inform her that the Court had scheduled a hearing for October 31, 1996. At that point, Bruce Strauss agreed to represent Ms. Dotson, pro bono.[2] He filed a Motion to Set Aside Default Judgment on December 13, 1996, and that motion was granted on January 3, 1997.[3] A trial was held on February 26, 1997. Ms. Dotson established the following facts at the trial. She is a fifty-one year old woman who resides in a low-income housing project in Kansas City, Kansas. She was married in 1962 at the age of seventeen, divorced in 1983, and has two grown children. She receives no support from her former husband. After her divorce, she took a series of jobs as a secretary, customer service representative at a bank, and other clerical positions, earning little more than $7.00 an hour. In 1982 she began college to improve her skills and her earning capacity. She received an associate degree from Donnelly College in 1984. She continued to work part-time while attending

---

1. Doc. # 26.

2. The Court is grateful to Bruce Strauss for agreeing to represent debtor in this adversary action. Mr. Strauss' efforts on behalf of this debtor are a credit to his profession.

3. Doc. ## 29 and 30.

Donnelly. She then enrolled at St. Mary's College in Atchison, Kansas, where she graduated in 1987 with a bachelor of science degree majoring in public administration. She paid for her schooling, in part, by incurring student loans in 1982, 1983, 1984, and 1985 in the approximate amount of $12,736.64 from the defendants in this proceeding.

After graduation Ms. Dotson attempted to find a job in public administration. Toward that end, she took exams for employment with the United States Postal Service and the Internal Revenue Service. She also took the State of Missouri Merit Examination. Ms. Dotson testified that in the past two years she has applied for between fifty and sixty positions. A number of those positions were for jobs in city and county governments in the Kansas City area. Nevertheless, since graduation, she has been able to obtain only clerical or menial labor jobs that pay in the range of $7.00 an hour. For example, she managed a Russell Stover candy store from 1992 through 1994. Then she drove a truck for a local concern. She now is employed as a clerk in the Wyandotte County, Kansas Criminal Court System, earning $7.06 an hour. Given this work history, there is no evidence that she has ever received any monetary benefit from her education.

Debtor was living in a trailer home at the time of the 1993 summer flood. Her home, along with all her possessions, was destroyed in that flood. The trailer was insured, and she received insurance proceeds in the amount of $15,000.00 after the flood. She used those proceeds to pay off the mortgage on her destroyed mobile home, to purchase replacement furniture, and to pay a deposit, and first month's rent on an apartment. But the insurance proceeds were not sufficient to replace all of her household items, so she has since purchased some furniture and appliances for which she owes approximately $1,300.00.

Debtor's current take-home pay is $965.64 a month, or $445.68 every two weeks. She sporadically supplements that income by tending bar for $5.00 an hour. She lives in a cooperative housing apartment and pays $265.00 a month for rent. She owns a 1984 Toyota with 172,000 miles.[4] Her fixed expenses total $729.00 a month. These expenses do not include an allowance for food, clothing, gasoline, or personal property taxes. She takes prescription medication for high blood pressure that costs forty dollars a month. In recent years she has borrowed approximately $1,500.00 from family members, and, when possible, is repaying that loan at $45.00 per month. She does not presently have health insurance, although she will be eligible for health insurance through her current employer in April of 1997. There was no evidence as to what the cost of such insurance would be. Debtor's tax return for 1995 showed gross income of $13,615.00, and her W2–Forms indicate her gross income was $13,401.68 in 1996. Her gross income has never exceeded $16,000. In addition to her high blood pressure, Ms. Dotson has dental problems and requires dentures, but cannot afford to purchase them. She makes no contribution to any retirement plan.

The Loan Servicing Center of defendant Sallie Mae presented Ms. Dotson with a payment schedule that would require her to make payments over the next ten years ranging from $100.81 a month to $233.74 a month. It proposes payments as follows: (1) Thirty-nine (39) payments of $100.81 each, commencing May 26, 1996; (2) Twelve (12) payments of $130.66, commencing August 26, 1999; (3) Twelve (12) payments of $169.34, commencing August 26, 2000; (4) Seventy-one (71) payments of $219.48, commencing August 26, 2001; (5) One (1) payment of $223.72 on July 26, 2007.[5] Ms. Dotson claims that requiring her to make these payments would impose an undue hardship on her.

### DISCUSSION

This adversary proceeding is brought in two Counts pursuant to 11 U.S.C.

---

4. At the time of the bankruptcy filing, debtor listed a 1989 Geo Metro, as to which GMAC had a lien in the amount of $6,004.63. The Schedules indicated debtor's intent to surrender such vehicle to GMAC.

5. Pl.Ex. # 10 (by letter dated March 12, 1996, the Loan Servicing Center stated that the outstanding balance on its loan was $12,960.43. No evidence was offered as to how the Loan Servicing Center computed the amount due).

§ 523(a)(8).[6] In Count II, Ms. Dotson asks this Court to discharge her student loans because they are more than seven years old. The parties, however, now agree that the loans first became payable less than seven years before the filing of her bankruptcy petition on October 1, 1993. I, therefore, find in favor of the defendants as to Count II of this adversary proceeding.

 In Count I Ms. Dotson asks this Court to find that excepting this debt from discharge will impose an undue hardship on her.[7] The Code does not define undue hardship, therefore, it is in the discretion of the bankruptcy court to determine if the facts of a particular case warrant a finding of dischargeability of the debt.[8] Three Circuit Courts of Appeal have adopted the *Brunner* test to assist them in exercising that discretion.[9] The only other Circuit to address this issue since the *Brunner* decision, while not adopting any test, has cited the *Brunner* test favorably.[10] The test, set out in *Brunner v. New York State Higher Education Services, Corporation*,[11] has the following three prongs:

(1) debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her de-

pendents if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) debtor has made good faith efforts to repay the loans.[12]

Ms. Dotson must satisfy all three prongs of the *Brunner* test to establish undue hardship. In order to satisfy the first prong, she must prove that she cannot currently maintain a minimal standard of living if forced to repay her student loans. Ms. Dotson proved that her net income is now $965.64 per month. She sporadically supplements that income by tending bar at the American Legion, for which she is paid $5.00 an hour. Her fixed monthly expenses total $729.00 and include: (1) $265.00 for the cooperative housing apartment that she rents; (2) $179.00 for utilities; (3) $30.00 for liability auto insurance, though she does not carry collision insurance; (4) $170.00 for miscellaneous bills; (5) $40.00 for prescription drugs; and (6) $45.00 for a family loan repayment. Debtor drives a 1984 Toyota with 172,000 miles. Ms. Dotson did not include in her fixed expenses what she spends on gasoline and food. She testified that she spends approximately

---

**6.** That provision reads as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

. (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition;

(B) excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

**7.** 11 U.S.C. § 523(a)(8)(B); *O'Brien v. Household Bank, FSB (In re O'Brien)*, 165 B.R. 456, 458 (Bankr.W.D.Mo.1994); *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 299 (3rd Cir.1995), *cert. denied* — U.S. ——, 116 S.Ct. 2532, 135 L.Ed.2d 1055

(1996); *Heckathorn v. United States Dep't of Educ. (In re Heckathorn)*, 199 B.R. 188, 192 (Bankr.N.D.Okla.1996); *Robinson v. United States Dep't of Educ. (In re Robinson)*, 193 B.R. 967, 969 (Bankr.N.D.Ala.1996); *Fox v. Pennsylvania Higher Educ. Assistance Agency (In re Fox)*, 163 B.R. 975, 977 (Bankr.M.D.Pa.1993).

**8.** *Ipsen v. Higher Educ. Assistance Found. (In re Ipsen)*, 149 B.R. 583, 585 (Bankr.W.D.Mo.1992); *Johnson v. USA Funds, Inc. (In re Johnson)*, 121 B.R. 91, 93 (Bankr.N.D.Okla.1990).

**9.** *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298 (3rd Cir.1995); *In re Roberson*, 999 F.2d 1132 (7th Cir.1993); *Brunner v. New York State Higher Educ. Serv. Corp. (In re Brunner)*, 831 F.2d 395 (2nd Cir. 1987).

**10.** *Rice v. United States (In re Rice)*, 78 F.3d 1144 (6th Cir.1996); *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994).

**11.** 831 F.2d 395 (2nd Cir.1987).

**12.** *Id.*, at 396.

$45.00 a month for gas, and that the remainder of her income is spent on food. She makes no allowance in her fixed expenses for clothing or annual expenses like personal property taxes. She explained that she has borrowed approximately $1,500.00 from family members in recent years, and, if funds are available, she repays that loan at $45.00 per month. If Ms. Dotson allows a minimum of $300.00 a month for food, forty-five dollars a month for gas, and fifty dollars a month for clothes, her expenses are $1,124.00. If she elects not to repay her family at the rate of forty-five dollars a month, her monthly expenses would still exceed her predictable monthly income of $965.64 by $113.36.

Also, Ms. Dotson does not presently have health insurance, although she said she hopes to obtain health insurance through her current employer in April 1997. But she did not indicate how the cost of that insurance would impact her monthly income. It was, however, undisputed that she suffers from chronic high blood pressure, and that she needs dentures, which she cannot now afford. Debtor's tax return for 1995 showed gross income of $13,615.00,[13] but she no longer works for that employer. She also introduced W–2 Forms, which indicate her gross income was $13,401.68 for 1996.[14] Ms. Dotson stated that her gross income has not exceeded $16,-000.00 since graduating, and that she has never earned much more than $7.00 per hour. And, though she is fifty-one years old, she makes no contribution to any retirement plan. Her parents both live out of the city, but she has been unable to afford to visit either of them in a number of years. Based upon these facts, I find that Ms. Dotson lives very frugally, and that she would not be able to maintain a minimal standard of living if forced to repay her student loans. She, thus, satisfies the first prong of the *Brunner* test.

She next must prove that additional circumstances exist which indicate that her inability to repay these loans is likely to persist for a significant portion of the repayment period. In *Brunner* the Second Circuit Court agreed with the District Court that debtor had shown no such additional circumstances.[15] Indeed, the debtor there was young, had graduated less than a year before filing her bankruptcy petition, and, though temporarily unemployed, had good prospects for future employment.[16] Here, Ms. Dotson is working, is unable to repay these loans, and has no reasonable prospect of enhanced income. She introduced five rejection letters over a two month period of time from state and county offices.[17] She also introduced a document entitled "Partial List of Jobs for Which I have Applied Since Graduating College." [18] The list contains twenty-nine agencies or companies. Nineteen of these agencies or companies never even granted her an interview. Ms. Dotson maintains she would like to obtain a job in the field of public administration, but her age and lack of experience make such a career seem unlikely. And, outside of that field, the evidence shows she has been, and will be, unable to find work at a higher rate of pay than she currently earns. Furthermore, it is unlikely that her chronic high blood pressure will go away, or that her need for prescription medication will cease. She will eventually have to replace her car in order to get to work, and she has no additional income to make car payments. Unlike the debtor in *Brunner*, Ms. Dotson has offered substantial evidence regarding her future prospects. As to the second prong, this case is very similar to *Fox v. Pennsylvania Higher Educ. Assistance Agency*.[19] In *Fox* the court was swayed by the fact that under the payment schedule proposed by the defendant, the debtor would be able to pay little more than interest on her debt before she would likely retire:

> This woman is fifty-three (53) years old and in ten (10) years, the normal time period with which we will look at a repayment of the student loan, she will be ap-

13. Pl.Ex. # 3.

14. Pl.Ex. # 8.

15. 831 F.2d 395, 396–97 (2nd Cir.1987).

16. *Id.,* at 397.

17. Pl.Ex. # 6.

18. Pl.Ex. # 10.

19. 163 B.R. 975 (Bankr.M.D.Pa.1993).

proaching retirement. If all the Debtor could afford during that ten (10) year period are interest payments and a small amount in an attempt to salvage sufficient funds to protect her in the event of various emergencies, then we would not blame this Debtor for losing all hope in what appears to be a desperate situation.[20]

Defendants here propose a ten year payment schedule ranging from $100.81 to $233.72 per month. As shown, Ms. Dotson cannot afford the smaller payments now. And, there is no basis for finding that her income will increase as time goes by. Further, her expenses, which have been kept to a minimum, will surely increase due to health costs and transportation expense. I find, therefore, that her inability to repay these loans is likely to persist for a significant portion of the repayment period.

Finally, Ms. Dotson must prove that she has made a good faith effort to repay her student loans. Courts consider the following factors as to this third prong: (1) whether the debtor has made some payments;[21] (2) whether she has made efforts to obtain a good paying job;[22] and (3) whether she has attempted to maximize income and minimize expenses.[23] Ms. Dotson testified that she made some payments on her student loan to First Wachovia Bank. That loan has now been assigned to Sallie Mae. The representative from Sallie Mae was unable to refute debtor's testimony. Ms. Dotson has certainly made sincere efforts to obtain a better paying job. She has repeatedly sought positions in the field of public administration as discussed above. I also find it noteworthy that Ms. Dotson has continued to work full-time at low paying jobs when others less resolute would have given up. Finally, as evidenced by Ms. Dotson's expenses above, she minimizes expenses and lives very frugally.

This case is not analogous to *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*,[24] referred to by defense counsel at trial. There, the debtor was thirty-one years old, had substantially higher income than Ms. Dotson, and filed her bankruptcy petition less than two years after she was to begin making payments on her student loans.[25] Furthermore, Ms. Faish had disposable income she wanted to save to move to a better apartment and to buy a new car.[26] In contrast, Ms. Dotson is fifty-one years old, has a minimal standard of living, and has no reasonable prospects of either enhancing her income or reducing her expenses, despite her best efforts.

I find that the facts above prove Ms. Dodson's good faith effort to repay her student loans. She has, therefore, satisfied all three prongs of the *Brunner* test. I, thus, find that excepting Ms. Dotson's student loans from discharge will impose an undue hardship on her, and I find that the debt evidenced by those student loans is dischargeable.

An Order is accordance with this Memorandum Opinion will be entered this date.

---

**20.** *Id.*, at 982.

**21.** *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993); *Robinson v. United States Dep't of Educ. (In re Robinson)*, 193 B.R. 967, 969 (Bankr.N.D.Ala.1996); *O'Brien v. Household Bank FSB (In re O'Brien)*, 165 B.R. 456, 459–60 (Bankr.W.D.Mo.1994); *Myers v. Pennsylvania Higher Education Assistance Agency (In re Myers)*, 150 B.R. 139, 143 (Bankr.W.D.Pa.1993).

**22.** *Roberson*, at 1136 (7th Cir.1993); *Robinson*, at 969; *O'Brien*, at 459–60; *Myers*, at 143.

**23.** *Roberson*, at 1136; *Robinson*, at 710; *Gammoh v. Ohio Student Loan Comm'n (In re Gammoh)*, 174 B.R. 707, 710 (Bankr.N.D.Ohio 1994); *O'Brien*, at 459; *Myers*, at 139.

**24.** 72 F.3d 298 (3rd Cir.1995).

**25.** *Id.*, at 300.

**26.** *Id.*, at 307.