In re Jayne M. YOUNG, Debtor.

Jayne M. YOUNG, Plaintiff,

v.

PHEAA

and

Academic Services in Trust for the University of Pennsylvania

and

Temple University, Defendants.

Bankruptcy No. 93–13117DAS.
Adversary No. 98–0264DAS.

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Sept. 30, 1998.

Jayne M. Young, Philadelphia, PA, debtor pro se.

Diane T. Ubele, Philadelphia, PA, Shipon & Skorbek, Philadelphia, PA, Shipon & Skorbek, Philadelphia, PA, Former Attys., for debtor.

Jason L. Swartley, PHEAA, Harrisburg, PA, for Pennsylvania Higher Education Assistance Agency.

Edward L. Berger, Gordin & Berger, Philadelphia, PA, for Academic Services in trust for The University of Pennsylvania College and Temple University.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Before us is a proceeding ("the Proceeding") instituted *pro se* by JAYNE M. YOUNG ("the Debtor") seeking to discharge her student loan obligations, pursuant to 11 U.S.C. § 523(a)(8)(B). The Debtor is an intelligent, healthy, single graduate of the prestigious University of Pennsylvania, with no present dependents. However, she is also a 50–year–old Black woman who was unemployed and out of unemployment compensation benefits at the time of the trial and has had no employment in her chosen legal field for a year and a half. The main issue is whether, having met the first (insufficient current income) and third (good faith) prongs of the test adopted by *In re Faish*, 72 F.3d 298, 305 (3d Cir.1995), she has proven the presence of the second (circumstances are likely to persist) prong as well. Finding her job search adequate and that § 523(a)(8)(B) dischargeability must ordinarily be all or nothing, we conclude that the Debtor is unable to pay the large minimal amount due on her student loans, satisfies the *Faish* test, and is entitled to their discharge.

## B. *PROCEDURAL AND FACTUAL HISTORY*

The Debtor filed the underlying individual Chapter 13 bankruptcy case on May 21, 1993. Although her counsel, Diane T. Ubele, Esquire, left the jurisdiction and abandoned the Debtor several years ago, she has persevered in fulfilling the terms of her Chapter 13 plan, confirmed on October 18, 1993. She testified that, when she explained her current economic plight to Edward Sparkman, Esquire, the Standing Chapter 13 Trustee, who filed a final report recommending her discharge on June 12, 1998, he advised her to file the Proceeding. On May 21, 1998, she did so, naming PHEAA, an acronym for the Pennsylvania Higher Education Assistance Agency, ACADEMIC FINANCIAL SERVICES IN TRUST FOR THE UNIVERSITY OF PENNSYLVANIA ("Penn"), and TEMPLE UNIVERSITY ("Temple") as Defendants. Penn and Temple were represented by a single attorney and are collectively referenced herein as "the Schools." After two continuances the Debtor achieved service on all of the Defendants and the Proceeding was tried on August 11, 1998.

The Debtor testified that, upon being left with two young children from a broken marriage, she was employed as a part-time secretary/legal assistant by a Philadelphia law firm from 1978 through 1994. During the early years of this employment, she also attended Penn part-time from 1978 until she obtained a bachelor's degree in 1985, at age 37. In 1991, she began graduate school, but was unable to get a degree before she left a year later. In 1994 she lost her employment due to "downsizing" at the firm.

The Debtor has spent the last several years looking for permanent full-time employment which she believes is commensurate with her education. In 1992 Debtor expended over $2200 on unsuccessfully seeking the assistance of a corporate job-search firm. Except for a six-month stint as a legal assistant in another firm from October 1996 to March 1997, which ended with the Debtor's claim of sexual harassment, the Debtor continued to work part-time and obtain unemployment compensation benefits through June 1998. At that time her last temporary position, as a substitute teacher, ended, as well as her unemployment compensation benefits. She therefore had no income in the two months prior to trial.

In response to discovery in the Proceeding, the Debtor testified that, although she has no income, her monthly expenses total $1,300.00, including $500 for food and $50 for cable television service. She testified that she has been living off depleted savings and has again become in arrears on her mortgage in an amount of approximately $8,000. The Debtor is doubtful about prospects of employment because she feels that, while she is very qualified for many professional positions, she is being discriminated against based upon her age and her lack of helpful contacts.

The Debtor obtained the loans which are the subject of this adversary proceeding between 1981 and 1990. As of August 1998, the Debtor is delinquent on eight student loan notes in the aggregate amount of $46,095.16. All of these payments were deferred through 1992 when she entered graduate school. PHEAA's witness, administrative officer Laurie Lint, testified that the lowest monthly payment terms available to the Debtor would require payments of $322.98 monthly for thirty years. An alternative plan would require payments of $379.22 for twenty-five years.

## C. *DISCUSSION*

The Debtor appears to concede that, since her loan payments were deferred until about a year prior to her bankruptcy filing, 11 U.S.C. § 523(a)(8)(A) is inapplicable. *See, e.g., In re Woodcock,* 144 F.3d 1340, 1342 (10th Cir.1998) (seven-year time period begins running after termination of deferments). She therefore relies on 11 U.S.C. § 523(a)(8)(B), which states as follows:

> (a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt ...
>
> ...
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in

whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

. . .

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants; . . .

In order to have a student loan debt discharged under the above Code section, the Debtor must prove that she would otherwise suffer an "undue hardship." In determining whether a debtor would suffer an undue hardship for failure to discharge a student loan, we are bound to apply the three-pronged test originally outlined in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir.1987) and adopted by our Circuit in *Faish, supra,* 72 F.3d at 305, *See also In re Mayer,* 198 B.R. 116, 124 (Bankr.E.D.Pa.1996), *aff'd as to debtor Queen sub nom. Queen v. Pennsylvania Higher Education Assistance Agency,* 210 B.R. 677 (E.D.Pa.1997), and *aff'd as to debtor Mayer,* No. 97–1380, 156 F.3d 1225 (3d Cir. May 14, 1998).

██ Under the *Brunner/Faish* analysis, the undue hardship exception applies only if the debtor proves the following:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependants if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

72 F.3d at 305, citing 831 F.2d at 396. *See also, e.g.,* Mayer, *supra,* 198 B.R. at 124; and

*In re Hoyle,* 199 B.R. 518, 521 (Bankr. E.D.Pa.1996).

At the close of the trial, we opined that, since the Debtor has had no income whatsoever for the past two months, she satisfied the first prong of the *Brunner/Faish* test at present. However, neither PHEAA nor the Schools were prepared to concede even this point in their post-trial submissions. PHEAA argued that the Debtor was better off than the debtor in *Brunner* in that she had displayed adequate financial resources by avoiding welfare dependency and paying off her Chapter 13 plan. The Schools pointed to particular items which the Debtor recited in answers to interrogatories on her monthly budget and vigorously disputed the Debtor's claims of age discrimination as the basis for her lack of success in seeking employment. With respect to her budget, particular issue was taken with her recitation of monthly expenditures of $50 for cable television service and $500 for food, some of the latter of which the Debtor indicated was devoted to maintenance of two German shepherd dogs. With respect to the age discrimination claims, the Schools appeared to contend that, if we accepted this argument, all elderly debtors would be able to obtain discharges under § 523(a)(8)(B).

We find the Defendants' arguments on this issue overstated and/or totally lacking in merit. The fact that we might conclude that a particular 50–year–old debtor with no income for a period of several months, whose age may indeed be a factor in an unsuccessful work search, lacks sufficient financial resources to maintain herself makes no statement whatsoever regarding the circumstances of other 50–year–old debtors. Quibbling about particular expenditures on a debtor's budget when that debtor has no income also seems pointless. The Debtor does not reside in a particularly fashionable neighborhood. She credibly testified that her mortgage is substantially in arrears, and that over the past several months she has supported herself on savings which are now exhausted.[1] Neither the expenditures refer-

---

1. The *pro se* Debtor's brief, while written in extremely articulate prose, reads more like a novel than a recitation of the facts of record. This court cannot and will not consider "evidence"

not of record. *See, e.g., In re MacDonald,* 222 B.R. 69, 72 (Bankr.E.D.Pa.1998), and cases cited therein. The only dispensation which we can make in light of the Debtor's *pro se* status is to

enced by the Schools as purportedly excessive nor any of her other claimed expenditures are indicative of extravagance which would undermine the Debtor's credibility in her claims of to financial hardship.

The comparison of this Debtor with the *Brunner* debtor is inapt. The *Brunner* debtor was not elderly, 831 F.2d at 396, and had given herself only ten months following her degree from graduate school to find employment. *Id.* at 397. Further, it appears that it was only on the second and third prongs of the three-pronged test on which the *Brunner* debtor was found wanting, not the first prong, as is in issue at this juncture of our reasoning process.

■ Many debtors working at regular jobs have been able to satisfy the first prong of the *Brunner* test. *See In re Dotson–Cannon*, 206 B.R. 530, 532, 533–34 (Bankr. W.D.Mo.1997); *Hoyle, supra*, 199 B.R. at 519–20, 521–23; *Mayer, supra*, 198 B.R. at 119, 125 (facts of debtor Queen); and *In re Fox*, 163 B.R. 975, 980–82 (facts of debtor Fox). In *Mayer* we held that a debtor with no income "clearly satisfies the first [prong of the *Brunner*] test." 198 B.R. at 125 (facts of debtor Mayer). We adhere to this seemingly tautological conclusion.

■ As for the third prong of the *Brunner* test, the Debtor's good faith in attempting repayment, the issue is not addressed by PHEAA in its brief and is expressly conceded by the Schools in their brief. In *Mayer* we held that this prong was satisfied by debtors who make only modest payments, but have waited a significant time after they made the student loans and graduated to attempt to utilize their education to seek discharge of their loans, 198 B.R. at 127–28, unlike the *Brunner* debtor. *See* 831 F.2d at 397 (debtor sought discharge in the month that her student loan payments first became due). The Debtor clearly has satisfied this prong under these standards.

The only difficult issue is determining whether the Debtor satisfied the second prong of the *Brunner* test. PHEAA emphasizes that the Debtor is healthy, has obtained an Ivy League degree, and had previously obtained employment generating income of $34,000 annually in her employment as a legal assistant from October 1996 to March 1997. The Schools argue that the Debtor has not tried hard enough to get a job, suggesting that she lower her sights below the professional positions for which she has tendered copious applications and seek out an unskilled position.

We find that the debtor has made numerous reported and therefore quite adequate efforts to regain employment. Given her dire financial straits, she has no incentive to do otherwise. It occurs to us that the Debtor's somewhat combative nature may be a symptom of an absence of inter-personal skills which impede her employment prospects.

However, no one is a perfect job applicant, and most people do at least eventually get jobs of some sort. The Defendants' arguments are therefore not without a certain appeal. It is always possible that a debtor seemingly trapped in a hopeless financial bind can be extricated when push comes to shove. This argument can, however, easily be pressed too far, as we indicated in the following passage from *Mayer, supra*, 198 B.R. at 127;

> anything could happen in the next five years..... [A debtor] may unexpectedly obtain a high-paying job, win the lottery, or meet and marry a professional basketball player. *See Vaughn v. Illinois State Scholarship Comm'n*, 151 B.R. 481, 486 (C.D.Ill.1993) (reversing bankruptcy court's denial of discharge of a student loan debt, court observes that, if a finding of undue hardship is rejected because a debtor might get a good paying job, "a debtor could never discharge a student loan because the debtor always has, at a minimum, the potential to find a good paying job").

---

lighten the admonition for her doing so. *See In re Wright*, 223 B.R. 886, 893 (Bankr.E.D.Pa. 1998) (dispensations to *pro se* litigants do not include a relaxed standard of proving claims);

and *In re Cook*, 146 B.R. 934, 939 (Bankr.E.D.Pa. 1992) (*pro se* litigant's attempt to attach "evidence" not offered at trial to a post-trial brief was unavailing).

■ The issue is resolved by weighing probabilities, given a debtor's particular fact situation. The Debtor's education from a prestigious school, good health, intelligence, considerable talents, self-confidence, and persistence (as amplified by her completing both her studies and her plan payments in the face of significant obstacles, including the disappearance of her counsel) make improvement of her financial circumstances a distinct possibility. However, it does appear that her age and, although she never so asserted, her race in addition, are also factors which do work against her chances of finding gainful employment. The cases cited by the Debtor, *Dotson–Cannon, Hoyle,* and *Fox* all involved debtors in the same age group as the Debtor. The decisions in these cases, in which the Debtors succeeded in § 523(a)(8)(B) proceedings, suggest that significant financial upward mobility at that stage in life is the exception rather than the rule.

■ The *Dotson–Cannon* court emphasizes the debtor's difficulty of paying between $100.81 and $233.72 per month over a ten-year period, with retirement approaching. 206 B.R. at 535. The *Fox* court similarly noted the difficulty of saddling an aging debtor with an additional financial obligation for a ten-year period. 163 B.R. at 981–82. It is obviously unrealistic to expect the instant Debtor to pay $379.22 for twenty-five years or $322.22 for thirty years, at which times she would be seventy-five and eighty years of age, respectively. To the extent that the Defendants argue that such a significant change in the Debtor's circumstances is likely that she could meet such a burden long after the normal retirement age, we can easily find that this second prong of the *Brunner* test is satisfied here.

■ PHEAA, as it did (unsuccessfully) in *Fox, supra,* where it proposed accepting only $20 monthly on at least a temporary basis, attempts to argue its way out of the perhaps inevitable conclusion of dischargeability in light of these facts. Citing *In re Hornsby,* 144 F.3d 433, 438–40 (6th Cir.1998), it suggests that we might use 11 U.S.C. § 105(a) as a means of *partially* discharging the Debtor under our general equitable powers. Although recognizing that *Hornsby,* states,

*id.* at 439, that *Faish* "explicitly rejected" such a "compromise" resolution, 72 F.3d at 307, PHEAA suggests a means of circumvention utilized in such cases as *In re Shankwiler,* 208 B.R. 701, 707–08 (Bankr.C.D.Cal. 1997); and *In re Hinkle,* 200 B.R. 690, 693–94 (Bankr.W.D.Wash.1996): declare only some of the eight loans nondischargeable, leaving nondischargeable the ones we consider her able to pay.

We believe that the use of § 105(a) in this context is not likely to find favor in the Third Circuit. As we stated in *In re 641 Associates, Ltd.,* 1993 WL 332646, at *7–*8 (Bankr. E.D.Pa. August 26, 1993), the Third Circuit Court of Appeals states as follows:

in *In re Morristown & E.R.R.,* 885 F.2d 98, 98–99 (3rd Cir.1989), . . .:

"Section 105(a) authorizes the bankruptcy court, or the district court sitting in bankruptcy, to fashion such orders as are required to further the substantive provisions of the Code. Section 105(a) gives the court general equitable powers, but only insofar as those powers are applied in a manner consistent with the Code. See Lawrence P. King, *Collier on Bankruptcy,* ¶ 105.04 at 105–15 & n. 5 (15th ed.1989). Nor does section 105(a) give the court the power to create substantive rights that would otherwise be unavailable under the Code. *See Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir.1985) (holding that a bankruptcy court does not have the authority under § 105 to create a lien to secure payment of environmental cleanup costs when the contract obligating the debtor to pay such costs did not provide for such a lien)."

*Accord, Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). . . . *See In re Amatex Corp.,* 97 B.R. 220–26 (Bankr.E.D.Pa.1989), aff'd, 102 B.R. 411 (E.D.Pa.1989). As we stated in *Amatex, id.,* at 225,

" § 105 cannot be utilized as a justification for our proceeding to take other-

wise doubtfully authorized judicial actions," *In re Telephonics, Inc.*, 85 B.R. 312, 318 (Bankr.E.D.Pa.1988), or " 'as a loose cannon ... to support otherwise insupportable claims.' "*In re University Medical Center*, 82 B.R. 754, 758 (Bankr. E.D.Pa.1988) (quoting *In re Latimer*, 82 B.R. 354, 364 (Bankr.E.D.Pa.1988)).

Section 105(a) has traditionally been successfully invoked only in the following two narrow categories of cases: (1) attempts to extend the scope of § 362(a) slightly beyond its normal contours. *See, e.g., In re Monroe Well Service, Inc.*, 67 B.R. 746, 750–53 (Bankr.E.D.Pa. 1986); and *In re Metro Transportation Co.*, 64 B.R. 968, 973–75 (Bankr.E.D.Pa. 1986); and (2) actions necessary to preserve the integrity of the Bankruptcy Court itself. See, *e.g., In re Clark*, 91 B.R. 324, 332–34 (Bankr.E.D.Pa.1988) (contempt power); and *In re Daily Corp.*, 72 B.R. 489, 492 (Bankr.E.D.Pa. 1987) (power to administer cases). *See generally* 2 COLLIER ON BANK-RUPTCY, ¶¶ 105.02 to 105.04, at 105–5 to 105–19 (15TH ed.1993).

*Accord, In re Taylor*, 223 B.R. 747, 750–54 (Bankr.9th Cir.1998) (language of § 523(a)(8)(B) requires that student loans be *totally* discharged if "undue hardship" is found).

We doubt that the Court of Appeals would look favorably upon any devices to circumvent the language of § 523(a)(8)(B) and its reasoning on § 105(a) in this context. On the other hand, if a holder of student loans is prepared to stipulate that certain student loans *are* unconditionally dischargeable, leaving only a limited number of loans remaining as particularly nondischargeable, there would seem to be no way of stopping it from doing so. However, PHEAA has not withdrawn its claims that *all* of its instant loans are nondischargeable. Unless and until it does so, it would seem to that only an exercise of § 105(a) powers in contradistinction to the language of § 523(a)(8)(B) would allow this court to choose which of the Debtor's loans should be discharged and which loans should not be discharged.

We note that, although the debtors in *Dotson–Cannon, Hoyle*, and *Fox* had some income, against which the sort of "partial discharge" solution proposed by PHEAA could have been measured, none of these courts chose to do so. It appears that the *Dotson–Cannon* and *Hoyle* courts implicitly, reasoned, as *Fox* did explicitly 163 B.R. at 981–82, that *any* payments on the student loans at issue were beyond the respective debtors' financial capacities. It will be recalled, again, that the instant Debtor has *no* income at present and that her future income-generating capabilities are difficult to predict. The facts of this case therefore present a poor candidate for embarking on this court's maiden voyage into the uncertain waters of partial § 523(a)(8)(B) discharges. It would certainly be more palatable to utilize such reasoning where a debtor's income, as well as the lender's designation of any lien obligation which it is willing to voluntary discharge, are clearly established in the record.

We are therefore not prepared to effect any sort of partial discharge of the Debtor's student loan obligations on this record. Consequently, we conclude that the Debtor has satisfied the second *Brunner* prong, because we find it most unlikely that she will acquire employment rendering her capable of paying, at best, $322.98 to the Defendants for thirty years.

### D. *CONCLUSION*

Finding that all three elements of the *Brunner* test as articulated as to the student loan debts at issue in *Faish* have been met and that a "partial discharge" of these debts is not a viable option here, we will proceed to enter an order declaring the student loans of the instant Debtor dischargeable under 11 U.S.C. 523(a)(8)(B).

### ORDER

AND NOW, this 30th day of September, 1998, after a trial of the above-captioned proceeding ("the Proceeding") on August 11, 1998, and upon consideration of the parties' respective post-trial submissions, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of Plaintiff, JAYNE M. YOUNG ("the Debtor"), and

against the Defendants, PHEAA, ACADEMIC SERVICES IN TRUST FOR THE UNIVERSITY OF PENNSYLVANIA, and TEMPLE UNIVERSITY.

2. As a result, its is DECLARED that the Debtor is DISCHARGED from the student loan obligations at issue.